# WEST DISINFECTING COMPANY *v.* PLUMMER.

---

TRIAL; WAIVER OF EXCEPTION; SALE OF DANGEROUS SUBSTANCES; PROXIMATE CAUSE; INSTRUCTIONS TO JURY.

1. Where the defendant introduces evidence after his motion to direct a verdict in his favor, made at the close of the plaintiff's case in chief, has been overruled, he waives any exception he may have reserved to the action of the court in overruling his motion. (Following *Main* v. *Aukam,* 4 App. D. C. 51, and *Slye* v. *Guerdrum,* 29 App. D. C. 551.)

2. One who sells an article to another which he knows to be dangerous, without notice of its dangerous nature or qualities, is liable for any injuries which may be reasonably contemplated as likely to result, and which do in fact result therefrom, to that person or any other who is not himself in fault; and it is immaterial whether the person injured was the actual purchaser, if his use of the article was that intended.

3. False representations to the purchaser of an insecticide by the seller, that the article sold would not harm the user of it, or failure on the part of the seller to inform the purchaser of its dangerous character, is the proximate cause of an injury to the purchaser by an explosion of the substance, where there is no other independent or efficient cause or wrong that can be said to have occasioned it.

4. It is not error for the trial court to refuse special instructions to the jury which are not supported by the evidence or which are substantially contained in the charge.

5. Where in a personal-injury action the plaintiff seeks to recover damages for injuries caused by a disinfectant, sold to him by the defendant, being blown into his eyes by the explosion of a sprayer furnished with the substance, when he attempted to use it, and the case turns upon the question of whether the defendant informed the plaintiff of the dangerous character of the substance at the time of its purchase, it is not error for the trial court to refuse an instruction asked by the defendant to the effect that, in order to entitle the plaintiff to recover, he must prove that there was a defect in the sprayer; that the defendant ought to have known that such defect existed, and that the defect was the proximate cause of the injury.

No. 2858.  Submitted December 10, 1915.  Decided January 10, 1916.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for personal injuries.  *Affirmed.*

The COURT in the opinion stated the facts as follows:

This action was brought by the plaintiff, William H. Plummer, against the West Disinfecting Company for damages, with a declaration in six counts.  These were reduced to two counts by an amendment.

The first charge that the defendant was a manufacturing chemist making and selling certain disinfectants; and that on

August 1, 1913, plaintiff purchased for his proprietor a quantity of insecticide known as Kil-Bug, and defendant furnished a sprayer with the same. Defendant represented that said insecticide was not poisonous, and could be used in the accompanying sprayer without harm to the person using the same; that notwithstanding the statement aforesaid plaintiff says that the insecticide was poisonous and dangerous, and that said sprayer was defective, and not in proper condition, in that the exhaust or safety valve failed to indicate when sufficient air was pumped in said sprayer; that said plaintiff, ignorant of its said condition, was pumping air in the said sprayer when the same exploded, and his hands, body, face, eyes, eyebrows, and eyelashes were burned by said substance, causing a disease to the eyes known as conjunctivitis, greatly injuring plaintiff to his damage $5,000.

The second count charges that plaintiff was engaged as manager for John J. Noonan, proprietor of certain lunch rooms in Washington; that he purchased for said proprietor August 1, 1913, a quantity of insecticide known as Kil-Bug, and had furnished with it a certain sprayer to be used in distributing said insecticide; that it was the duty of the defendant to place on the receptacle of said insecticide a label informing plaintiff of the dangerous and poisonous nature of the same, which it failed to do, and it negligently and wrongfully furnished plaintiff a sprayer with which to use said insecticide that was not in proper condition in that it failed to indicate when sufficient air had been pumped in said machine; and failed to inform the plaintiff of said defect; that while plaintiff was engaged in pumping air into said sprayer the same exploded and the said substance burned his face, eyes, etc., injuring his eyes and causing a disease called conjunctivitis; that by reason thereof he suffered great pain and injury to his damage $5,000.

Plaintiff's evidence tended to show that August 1, 1913, he was general manager for John J. Noonan, who was proprietor of the Maryland Lunch Room, at 610 Ninth street, the Virginia theater, the Stag Hotel, and the F. F. V. Lunch Room, at 1008 Pennsylvania avenue; Noonan was at the time in Europe, and plaintiff's duties as general manager were to see to everything.

It was his duty to superintend the lunch places and keep them clear of bad odors, insects, etc. He purchased 5 gallons of the disinfectant on August 1, 1913, of defendant, which furnished a sprayer with which to use it; defendant's manager on three occasions interviewed him with a view to making the sale; the agent was asked if the substance was dangerous, for the reason that plaintiff was fearful that some of the stuff might get into the food and injure some of his patrons; defendant on each occasion said it was not poisonous, and that you could drink it if you wanted to; that the odor makes the bug disappear; and it is for disinfecting purposes; the substance was delivered part in the sprayer and part in the can, 3 gallons in the can and 2 in the sprayer; he was told to pump the sprayer as you would a bicycle-tire, and an automatic-valve in the side would blow off when there was enough air in the sprayer; and that when the sprayer was pumped up the stop-cock could be turned and the fluid could be sprayed around the cracks.

On the evening of the 5th of August plaintiff was pumping the sprayer as directed, and the whole thing exploded, and the substance came up out of the cracks and threads in the top of the sprayer and came into his face and eyes, burning his clothes, hands, face, and some of it going into his eyes. Plaintiff went immediately to the Emergency Hospital and was treated for the burns; that he was afterwards treated by an oculist for conjunctivitis caused by the fluid; that he suffered great pain; that the light hurt his eyes and he had to wear colored glasses; that plaintiff lost most of the time from his business for three or four months; that his eyes pained him a great deal, and he lost sleep, and was very nervous.

The general manager called on plaintiff after the accident, and said the sprayer should never have gone out of the office; that the valve was out of order and the sprayer was too much worn about the middle. There was no label on the can or sprayer. The general manager gave him a label at this time which he said ought to have been on the can. This label described Kil-Bug as a perfect insecticide for killing bugs, roaches, etc., and was guaranteed by defendant under the insecticide act of 1910

and under the drugs act of 1906, "Kil-Bug Kills by Contact."
The general manager told him the can ought to be labeled poison
under the law of the District. The seller called it a disinfect-
ant, and plaintiff did not know at the time of purchase that it
was called Kil-Bug. That defendant's agent had offered to
demonstrate the use of the sprayer, and did pump the sprayer up
and let the fluid spray for about a minute. Plaintiff was told
to pump the plunger up and down; that the little valve was
supposed to blow off when there was enough air in the sprayer,
and you would then turn the stop-cock and spray. That the
thing was pumped about one and one-half minutes, and then
the fluid flew up in his face. The Kil-Bug was purchased for
his proprietor's houses and billed to him; but the bill had never
been paid. Other testimony tended to show the nature of plain-
tiff's burns, and the injury to the eyes, and his loss of time.

The District chemist testified that he had analyzed the Kil-
Bug, and that it contained 9 per cent of phenols,—phenols being
carbolic acid and cresols,—and was poisonous.

Evidence tended to show that the can exhibited to the jury was
the can delivered and had never been changed. It was not
labeled.

At the conclusion of plaintiff's evidence defendant offered a
motion to direct a verdict in his favor, which was overruled and
exception taken. It then introduced service tending to show that
the sprayer used by the plaintiff was one used by defendant in
demonstration, and was only loaned with the can of Kil-Bug;
that after the accident it was found that the screw cap in the
head of the pump was loose and entirely unscrewed. That if the
screw had been in place, probably no accident would have
occurred; but there was a defect in the value. That this did not
amount to anything; that it would be impossible to put so much
power in the pump as to force the valve off. That the screws
around the top were loose. That plaintiff said he was interested
in some thing that would kill bugs, and asked about an article
called Kil-Bug, and gave an order for 5 gallons. The selling
agent testified that no representation was made that it was harm-
less. Plaintiff was told that it would kill the bugs. Defendant's

agent came down to the lunch room to make a demonstration, but plaintiff did not remain to see it. That the sprayer was in perfect order; that the can was labeled; that the can in which delivery was made was leaking; that 3 gallons of the fluid were carried in the 5 gallon can and 2 in the sprayer, and this 5-gallon can was replaced by the 3-gallon can shown to the jury.

Plaintiff's evidence in rebuttal tended to show that no 5-gallon can was delivered, but that the 3-gallon one exhibited in court was the only one.

The court charged the jury that the case presented to them was that the defendant sold to Plummer a fluid which was to be used as a disinfectant, declaring it could be used in the sprayer accompanying the same without any harm to the person using the same, and thereafter blew into his eyes and face, as has been described in the testimony. In other words, the cause of action is based upon the fact that the fluid which was sold as a disinfectant was misrepresented to the plaintiff, and that thereby he was injured in using it in the manner he had been instructed to use it.

Two instructions asked by the plaintiff were given.

The first was to the effect that if the jury find from the evidence that plaintiff was manager for John J. Noonan, and that as such manager he purchased for said Noonan a certain disinfectant; that at the time of said purchase he was informed by the agents of the said defendant that the said substance was not poisonous and could be used without doing any harm to the person using the same; and if they further find that, notwithstanding the statement aforesaid, the said disinfectant was dangerous and poisonous, and while said plaintiff was using the same as instructed an explosion occurred, and by reason of the dangerous and poisonous character of the said substance the said plaintiff was injured about the hands, body, face, eyes, eyebrows, and eyelashes; and that if they further find that by reason thereof there was caused to the eye of the said plaintiff a disease known as conjunctivitis,—they are instructed as a matter of law that the said plaintiff is entitled to recover such damages as will compensate him for said injury aforesaid, unless they find by a

preponderance of the evidence that the said plaintiff's own negligence at the time that he used the said substance caused the act which occasioned injuries to him.

The second instruction, containing the recital above, was to the effect that if defendant was engaged in the business of a manufacturing chemist, and that it manufactured or sold a disinfectant or insecticide called Kil-Bug, and that on the 1st day of August, 1913, the plaintiff purchased for his said proprietor a quantity of the said insecticide, and that the said defendant furnished to be used with the said purchase a sprayer, and that at the time of the said purchase there was no statement made, nor was there a statement on the container informing the plaintiff of the dangerous and poisonous contents of the said insecticide; and that if they further find that the said insecticide was dangerous and poisonous, and that by reason thereof the said plaintiff, while using the same, was injured by an explosion of said sprayer, they are instructed as a matter of law that the plaintiff is entitled to recover damages for the injury sustained. Exception was taken to these instructions.

At the request of defendant the court instructed the jury that the plaintiff cannot recover unless he shows by a preponderance of the evidence that either the failure to label the can containing Kil-Bug, if you find said can was not labeled, or the failure to give notice of the character of Kil-Bug, if you find that no notice was given, or both, were the proximate and efficient cause of the injury, if any, which he suffered; and, if this cause or these causes are not connected with the accident by an unbroken sequence of events, there can be no recovery.

He also instructed them, at the request of defendant, that the burden of proving contributory negligence is on the defendant unless it is disclosed in proving the plaintiff's own case, and that in considering whether or not the plaintiff was guilty of conduct which contributed to his own injury, you are to consider the evidence offered on his behalf, as well as the evidence offered on behalf of the defendant, and if, upon all the evidence, you

believe that the plaintiff was guilty of contributory negligence, then your verdict must be for the defendant.

Defendant's instruction No. 1 was to the effect that if the sprayer in question which was left at the Maryland Lunch Room was not purchased by the plaintiff or loaned to him, but taken there for demonstrating purposes and left there in anticipation of a second demonstration, then the plaintiff had no right to use it or to remove it to the F. F. V. Lunch Room, and if he was injured by said sprayer, the defendant is not liable. This was refused and exception noted.

The second prayer of defendant was, if you believe that the plaintiff was fairly warned as to the character of Kil-Bug, either by the remarks of the defendant's agent, the name of Kil-Bug, the nature and uses of Kil-Bug, or the presence on the first can delivered to the plaintiff of the Kil-Bug label, then the plaintiff cannot recover.

This was refused with exception noted.

The fourth prayer of defendant, if, taking into consideration the intelligence of the plaintiff and also the purpose for which the Kil-Bug was intended to be used, you believe that the defendant had no reason to anticipate, or presume that it would be applied to the plaintiff's eyes and face, then the application of the said Kil-Bug to the plaintiff's eyes and face and the injury, if any, resulting therefrom, would not be such a probable or natural result of the failure to label the receptacle in which said Kil-Bug was placed, if you find that said receptacle was not labeled, as would make the defendant liable.

This was refused and exception noted.

Prayer No. 5, that before the plaintiff can recover he must prove by the preponderance of the evidence that there was a defect in the sprayer, that the defendant knew or ought to have known that such defect existed, and that said defect was the proximate and efficient cause of the injuries of the plaintiff.

This was refused and exception noted.

The jury returned a verdict for the plaintiff for $2,000.

Motion in arrest of judgment was overruled and judgment entered on the verdict, from which defendant has appealed.

*Mr. George X. McLanahan, Mr. H. R. Burton,* and *Mr. W. S. Culbertson,* for the appellants in their brief cited:

*Ætna Ins. Co.* v. *Boon,* 95 U. S. 117; *Alexander* v. *New Castle,* 115 Ind. 51 (1888); *Behling* v. *Pipe Lines,* 160 Pa. 359 (1894); *Bragdon* v. *Perkins-Campbell Co.* 30 C. C. A. 567, 87 Fed. 1109; *Brown* v. *W. St. L. & P. R. Co.* 20 Mo. App. 222 (1886); *Burk* v. *Creamery Pkg. Co.* 126 Iowa, 730 (1905); *Carter* v. *Towne,* 103 Mass. 507 (1870); *Rockford* v. *Tripp,* 83 Ill. 247 (1876); *Cleveland* v. *Harries,* 32 App. D. C. 300; *Cole* v. *German Sav. & L. Asso.* 124 Fed. 113; *G. H. & S. A. R. Co.* v. *Chambers,* 73 Tex. 296 (1889); *Glover* v. *The London & S. W. R. Co.* L. R. 3 Q. B. 24 (1867); *Goodlander Mill Co.* v. *Standard Oil Co.* 63 Fed. 400 (1894); *Hartman* v. *Clarke,* 104 App. Div. 62 (1905); *Hazel* v. *Owensboro* (Ky.) 99 S. W. 315 (1907); *Hoag* v. *Lake Shore & M. S. R. Co.* 85 Pa. 293; *Insurance Co.* v. *Tweed,* 7 Wall. 44; *Jenks* v. *Wilbraham,* 11 Gray, 142 (1858) (cit. 144); *Losee* v. *Clute,* 51 N. Y. 494 (1873); *Mack* v. *Lombard & South Str. P. R. W. Co.* 18 Wash. L. Rep. 84 (Pa.) (1890); *McCaffrey* v. *Mossberg & G. Mfg. Co.* 23 R. I. 381 (1901); *McClary* v. *Sioux City & P. R. Co.* 3 Neb. 44 (1873); *Milwaukee, etc. R. Co.* v. *Kellog,* 94 U. S. 469, cit. 474, 475 (1876); *Munsey* v. *Webb,* 37 App. D. C. 185–188 (231 U. S. 150); *Necker* v. *Harvey,* 49 Mich. 517, 14 N. W. 503; *Putnam* v. *Broadway & S. Ave. R. Co.* 55 N. Y. 108 (1873); *R. Co.* v. *Ballentine,* 28 C. C. A. 572, 84 Fed. 935; *Renner* v. *Canfield,* 36 Minn. 90 (1886); *S. S. Pass. R. Co.* v. *Trich,* 117 Pa. 390; *Sav. Bank* v. *Ward,* 100 U. S. 195, 204, 205 (1879); *Scheffer* v. *R. Co.* 105 U. S. 249, 26 L. ed. 1070; *Smith* v. *Borden's Condensed Milk Co.* 95 N. Y. Supp. 900 (1905); *Smith* v. *Commonwealth Elec. Co.* 241 Ill. 252 (1909); *Standard Oil Co.* v. *Murray,* 119 Fed. 572 (C. C. A. 7th Ct. 1902); *Taylor* v. *Baldwin,* 78 Cal. 517 (1889); *Teis* v. *Smuggler Min. Co.* 158 Fed. 260 (1907); *Thomas* v. *Winchester,* 6 N. Y. 397 (1852); *Washington-Virginia R. Co.* v. *Himelright,* 42 App. D. C. 532; *Wohlfahrt* v. *Beckel,* 92 N. Y. 490.

*Mr. D. W. Baker* and *Mr. John W. Staggers,* for the appellee, in their brief cited:

*Waters-Pierce Oil Co.* v. *Deselms,* 212 U. S. 150; *National Sav. Bk.* v. *Ward,* 100 U. S. 195; *Wellington* · v. *Downer Kerosene Oil Co.* 104 Mass. 64; *Elkins* v. *McKean,* 79 Pa. 493; *Weiser* v. *Holsman,* 33 Wash. 87; *The G. R. Booth,* 171 U. S. 450; *Clement* v. *Crosby & Co.* 148 Mich. 293, 111 N. W. '745; *Stowell* v. *Standard Oil Co.* 139 Mich. 18, 102 N. W. 227; *Thomas* v. *Winchester,* 6 N. Y. 397; *Lewis* v. *Terry,* 111 Cal. 139; *Standard Oil Co.* v. *Parrish,* 145 Fed. 829; *Huset* v. *J. I. Case Threshing Mach. Co.* 120 Fed. 865; *Johnson* v. *Cadillac Motor Car Co.* 194 Fed. 497; *Ketterer* v. *Armour Co.* 200 Fed. 322; *Gerkin* v. *Brown & S. Co.* 143 N. W. 48 (Mich.); *Olds Motor Works* v. *Shaffer,* 145 Ky. 616; *Boyd* v. *Coca-Cola Bottling Wks.* 177 S. W. 80; *Wolcho* v. *Rosenbluth,* 81 Conn. 358; *Cunningham* v. *Pease House Fur. Co.* 74 N. H. 435; *Torgesen* v. *Schultz,* 192 N. Y. 156; *Clement* v. *Crosby & Co.* 148 Mich. 293; *State of Md. use* v. *Fox & Son,* 79 Md. 514; *Ellis* v. *Republic Oil Co.* 133 Iowa, 11.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Errors are assigned as follows:

That the court erred in refusing to direct a verdict for the defendant at the end of the plaintiff's case, upon the ground that the acts of the defendant complained of were not the proximate cause of the injury of the plaintiff, and upon the further ground that there was no privity of contract between the plaintiff and the defendant herein.

The other assignments are on granting the plaintiff's first and second prayer and refusing the defendant's prayers, and for overruling the defendant's motion in arrest of judgment.

1. The first assignment of error based upon refusal of the motion to direct a verdict for the defendant was waived by the defendant's introduction of evidence. *Main* v. *Aukam,* 4 App. D. C. 51; *Slye* v. *Guerdrum,* 29 App. D. C. 551–553, and cases there cited.

2. There was no error in giving the plaintiff's first and second instructions. If one carelessly places upon the market a dangerous article, he must be charged with negligence to third persons as in the case of poisons. The defendant was charged, and the jury necessarily so found, that the disinfectant was sold with the representation of its harmlessness. Whether so or not, it was the duty of the defendant to label the can containing the fluid so as to show its dangerous character, or to represent the same to the party purchasing. A man who delivers an article which he knows to be dangerous, without notice of its nature and qualities, is liable for any injury which may reasonably be contemplated as likely to result, and which does in fact result, therefrom, to that person or any other, who is not himself in fault, and it matters not whether the person injured was the actual purchaser from the defendant, if his use of the same was that intended. As a matter of fact, the plaintiff may be regarded as the purchaser in this case. The proprietor of the lunch rooms was in Europe, and plaintiff was his general manager, charged with the duty of attending to all matters connected with the business. As such manager he made the purchase for the proprietor and undertook to use it in the manner intended for the proprietor's benefit. This misrepresentation of the character of the fluid, or the failure to inform the plaintiff of its dangerous character, was the proximate cause of the injury, there being no other independent or efficient cause or wrong that can be legally said to have occasioned the same. The whole subject is reviewed by the Supreme Court of the United States, and the doctrine firmly established in *Waters-Pierce Oil Co.* v. *Deselms,* 212 U. S. 159, 53 L. ed. 453, 29 Sup. Ct. Rep. 270.

3. Defendant's prayer No. 1 was rightly refused. It was not supported by the evidence in the case, which showed that the sprayer was used by the person and in the manner that was intended on its sale. The second prayer, to the effect that plaintiff was warned as to the character of the fluid by its name and the nature of its uses or the presence of a label on the first can, was substantially contained in the charge given, and

was also rightly refused. The jury found that the can was not labeled as dangerous, and also that defendant had represented it as harmless. Defendant's prayer No. 4 was rightly refused. The fifth prayer of the defendant, relating to the defect in the sprayer, was properly refused, because the court did not present any such issue to the jury. The case was made to turn upon the character of the fluid and the failure of defendant to inform plaintiff of its dangerous character.

We find no error in the proceedings, and the judgment will be affirmed, with costs.                          *Affirmed.*