## SHEPARD v. DENVER TRAMWAY CORPORATION.

### No. 634.

Circuit Court of Appeals, Tenth Circuit.

Dec. 23, 1932.

Emory L. O'Connell and A. X. Erickson, both of Denver, Colo., for appellant.

W. A. Alexander, of Denver, Colo. (Cecil M. Draper and Gerald Hughes, both of Denver, Colo., of counsel), for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

LEWIS, Circuit Judge.

Appellant, plaintiff below, brought suit against appellee, a Delaware corporation engaged in the business of operating a street railway system in Denver, to recover damages for personal injuries alleged to have been sustained through the negligence of appellee while she was alighting from a street car. The answer denied the charges of negligence and plead contributory negligence on the part of plaintiff. At the close of the evidence the court instructed a verdict in favor of appellee.

The facts are not in dispute. Appellant, in alighting, stepped on a so-called button embedded in the street pavement, causing severe injury to her right ankle. She had immediately before stepping down on the button released the hand-hold on the car. Buttons are placed in the pavement by the city where the cars stop to mark safety zones. They were placed at intervals parallel to the track and seven feet therefrom. They extended back from the cross walk about sixty-three feet. The last four buttons curved in sharply toward the track, being respectively six feet, five feet, four feet, and two feet ten inches therefrom. These last four buttons were placed closely together, it appearing from the plat introduced in evidence that the distance between the edges of the last two buttons was about nine inches. They are fifteen inches in diameter at the base, two and three-fourths inches high at the center, with convex surface which is corrugated. The negligence charged is that the defendant failed to furnish plaintiff a safe place to alight from the car. She was a passenger. On the occasion in question the car stopped so that the exit door was immediately opposite the button nearest the track, and the top of this button on which appellant stepped was thirteen and one-half inches below the bottom step, half of it, seven and one-half inches, being under the step and the other half outside of a perpendicular plane dropped through the outer edge of the step. The safety zones thus marked by the buttons are for the purpose of protecting those who enter or leave the car, shielding them from automobile or other street traffic.

The real complaint of appellant is that the car did not move farther on before it stopped at this street crossing for the purpose of letting off passengers. There is nothing about the buttons that would suggest to a reasonably prudent person, so far as the evidence goes, that they are dangerous obstructions. Passengers leaving the car and those intending to enter it must pass over or between these buttons in order to reach or leave the sidewalk. It is a matter of common

knowledge that street cars cannot always stop at an exact place along the zones. At times street traffic in front of the car is held up at the cross street by safety signals ahead, and at other times the zone for the same reason is only partially clear; at other places where there is a switch letting cars in from a cross street the point of stopping the car at the safety zone is regulated to some extent by the projecting swing of the end of the incoming car. The cars are electrically operated. Assuming that the establishment of the safety zones in the manner stated was a reasonable precaution for safety, we know of no better or safer way of marking them, and no better way has been suggested, than that shown in this case. When a car does not obstruct street traffic it passes freely over the zone and the buttons.

We turn to the measure of care which the law exacts of a street railway company to its passengers when they are entering or leaving the car. Necessarily they must enter from the street and alight into it. Unlike non-urban railways they have no station grounds, comfortable waiting accommodations and platforms from which passengers enter and leave the cars. Their highest degree of care is to provide safe tracks, safe cars, and other safe appliances in operating its cars. They owe a less degree of care to passengers alighting. Buswell on Personal Injuries (2d Ed.) § 121; Elliott on Railroads (3d Ed.) § 1545; Reid v. Minneapolis St. Ry. Co., 171 Minn. 31, 213 N. W. 43; Thompson v. Gardner, W. & F. St. Ry. Co., 193 Mass. 133, 78 N. E. 854, 118 Am. St. Rep. 459; Kentucky T. & T. Co. v. Soper, 215 Ky. 536, 286 S. W. 776; Lenoue v. Worcester Consol. St. Ry. Co., 257 Mass. 285, 153 N. E. 533; Perret v. George, 286 Pa. 221, 133 A. 228. No evidence was adduced, nor perhaps properly could be, that the conditions portrayed by the plaintiff were dangerous to an alighting passenger, further than the accident to plaintiff, and that was not of itself evidence of negligence. The buttons were put in their position by the city, which would sustain the assumption of a reasonably prudent person that they were not dangerous to footmen passing over them. Then how can it be maintained that defendant and those who operated its cars should have anticipated the plaintiff's misfortune or one of the same kind to one alighting from the car? "But it is generally held, that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S. 469, 475, 24 L. Ed. 256. See, also, Cole v. German S. & L. Soc. (C. C. A.) 124 F. 113, 63 L. R. A. 416; Chicago, S. P., M. & O. Co. v. Elliott (C. C. A.) 55 F. 949, 952, 20 L. R. A. 582. In Birmingham v. Rochester City & B. R. Co., 137 N. Y. 13, 32 N. E. 995, 997, 18 L. R. A. 764, the opinion was by Judge Peckham, afterwards a member of the United States Supreme Court. The defendant operated a street railway. The state planned and constructed a bridge across a canal in the city over which the defendant extended its tracks and operated its cars. The plaintiff was seriously injured in a car while it was crossing the bridge. To accommodate traffic on the canal it was necessary at times to raise the bridge. Hydraulic power was used for that purpose, and in order to reduce the amount of power necessary to lift the bridge heavy weights of pig iron were used as counterbalance. When the bridge was in place these weights hung over, eleven or twelve feet above the floor of the bridge. While the car was passing, some of the weights fell, passed through the car and seriously injured the plaintiff. In holding that the plaintiff should have been nonsuited, Judge Peckham said:

"Nor was the evidence in this case sufficient, in our judgment, to submit to the jury the question of negligence on the part of the defendant in driving on this bridge while the weights were suspended in the manner described. The plan and method had received the approval of the state engineer and surveyor, and the bridge had been built under the direction and supervision of another state officer, the superintendent of public works. * * * There was nothing to suggest to the general traveler or to the defendant the presence of any defective welding of any of the stirrups which supported the weights of iron. * * * If a defect in the welding were dangerous, and if any such defect might be discovered by proper inspection in the course of manufacture, it might justly be supposed by the defendant that all such precautions had been taken by the authorities of the state before the stirrups were placed in their position, and that the opening of the bridge for travel was an assurance that no discoverable or preventable defects existed."

In Farrington v. Boston Elevated Railway Co., 202 Mass. 315, 88 N. E. 578, there was a reserved space in Huntington Avenue,

Boston, twenty-five feet wide, which was laid out as a part of the avenue for the use of street railways and for grass. This reserved space was a few inches above the level of the street on either side and is bounded with granite curbing set three feet six inches from the inside of the rail. At cross street intersections the curbing mentioned terminated in curved corner blocks, which turned inward toward the rails and came within seven inches of the nearest one. The plaintiff, Mrs. Farrington, in alighting from a car stepped on the curved curbing, which was higher than the surface just beyond, and broke her leg. The court held that the street car company was not liable. In Clogher v. New Orleans Ry. & Light Co., 143 La. 85, 78 So. 247, the plaintiff complained that the car was not stopped at its regular stopping place but farther on, and that in alighting she stepped on a curbing seven inches from the outer edge of the car step and was thereby caused to fall and break her leg. The Supreme Court of Louisiana held the defendant not liable.

█ The facts stated and the authorities cited cause us to conclude that appellee was not guilty of actionable negligence as charged.

Affirmed.

COTTERAL, Circuit Judge (dissenting).

The case belongs to that class where a passenger is invited to alight at a place of danger due to the maintenance of some improvement placed by a city in the street. It should be distinguished from those cases where the city alone is negligent, or the passenger after alighting travels into a place of danger. The two factors to be considered are the negligence of each party.

The passenger must not contribute to the accident. The plaintiff testified that the lowest step of the car was high from the pavement, she looked down carefully, stepped down very slowly and carefully, and the buttons were of the same color as the pavement, which looked smooth. She had often alighted at that intersection, knew the buttons were on the street, but she "didn't figure them out, they went so far back." The accident happened at night. The plaintiff said she guessed it was light. On this evidence, it seems to me the question of contributory negligence was one for the jury.

On the subject of defendant's negligence, which the majority has determined in its favor, it is true the zone buttons were legally installed by the city for the safety of travelers, and the company had the right to stop the car elsewhere than at the intersection for

purposes of its safety and convenience. But, in doing so, its duty was not to open the gates and invite plaintiff to alight where she would be subjected to unnecessary hazard. It could reasonably anticipate that if the steps were directly over an oval zone button she would alight on it, and by turning her ankle sustain an injury. Whether it was due prudence to invite her to alight where she did so was certainly a question for the jury. For the duty of the company was to exercise toward plaintiff as a passenger the high degree of care of a prudent operator under the circumstances. 10 C. J. pp. 944, 945.

Analogies are found in many cases. In Wakeley v. Boston Elevated Ry. Co., 217 Mass. 488, 105 N. E. 436, the car was stopped beyond the regular stopping place, the operator invited plaintiff to alight, and she was injured by stepping into a depression. It was held that negligence of both parties was for the jury. Like decisions were rendered in Bass v. Concord Street Ry. Co., 70 N. H. 170, 46 A. 1056; Pabst v. Public Service Ry. Co., 104 N. J. Law, 537, 141 A. 773; Murray v. Seattle Electric Co., 50 Wash. 444, 97 P. 458; and Stewart v. St. Paul City Ry. Co., 78 Minn. 85, 80 N. W. 854.

It is unnecessary to multiply citations. They establish the rule that negligence may be predicated on the stopping of a car and inviting a passenger to alight where an injury would otherwise not have been sustained. Such was the alleged ground of negligence in this case. In my opinion, the case should have been submitted to a jury.