Evelyn M. EDWARDS, Administratrix of the Estate of Rolf S. Edwards, Deceased, Appellant

v.

MAZOR MASTERPIECES, INC., a corporation, Appellee.

No. 16205.

United States Court of Appeals District of Columbia Circuit.

Argued May 2, 1961.

Decided Oct. 19, 1961.

Petition for Rehearing En Banc Denied Nov. 15, 1961.

548

Mr. Dorsey K. Offutt, Washington, D. C., with whom Mr. Bernard Rowitz, Washington, D. C., was on the brief, for appellant.

Mr. Richard W. Galiher, Washington, D. C., with whom Messrs. William E. Stewart, Jr., and Julian H. Reis, Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, Chief Judge, and EDGERTON and BAZELON, Circuit Judges.

EDGERTON, Circuit Judge.

Appellee sold appellant a folding sofa-bed which she and her family used several years, chiefly closed as a sofa but sometimes open as a bed, without accident. But when appellant came home on July 9, 1958, she found the dead body of her 12-year-old son inside the closed sofa-bed. When the coroner arrived, the bed was open and the boy's body was lying on it covered with perspiration.

Appellant brought this suit as her son's administratrix for wrongful death and damages under the survival act. The complaint alleges among other things that "death was due to the negligence and carelessness of the defendant in selling the aforementioned sofa bed which was unsafe, defective and not fit for the use intended. * * *" The District Court granted appellee's motion for summary judgment. We think the court erred.

One who supplies a chattel for another to use is liable for bodily harm caused by the intended use if he "(a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so." Restatement, Torts (1934) § 388. Prosser, Torts (2d ed. 1955) § 84; James, Products Liability, 34 Texas L.Rev. 44, 218 (1955). Cf. West Disinfecting Co. v. Plummer,

44 App.D.C. 345; Jamieson v. Woodward & Lothrop, 101 U.S.App.D.C. 32, 37, 247 F.2d 23, 28.

Rule 84 of the Federal Rules of Civil Procedure [28 U.S.C.A.] states that the "forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Form 9, entitled "Complaint for Negligence", alleges that "On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway." Form 9 does not suggest what the nature of the defendant's alleged negligence may have been. It may have consisted, e. g., in driving too fast, driving while drunk, driving with bad brakes or an otherwise defective car, or keeping an inadequate lookout. Appellant's complaint in the present case is similar. Like Form 9, it pleads no evidence.

There were affidavits tending to show the bed was safe, and also an affidavit of the coroner tending to show it was dangerous. The coroner's affidavit said that after the boy's body was removed from the bed, "a policeman placed his weight on the middle right side facing it from the front to the head & the bed closed on its own accord." In answer to appellant's interrogatory 28, "Are there any safeguards to prevent the sofa bed from closing after it is opened from its closed position?" appellee said: "Yes, when it is fully open for use." In answer to interrogatory 29, "If the answer to 28 is yes, describe these safeguards and furnish diagrams and pictures as to its construction", appellee said: "It locks when open full for use." These answers suggest that appellee may have known there was nothing to prevent the bed from closing when it was partly but not fully opened.

After summary judgment had been granted, in support of a motion for reconsideration the plaintiff filed a safety engineer's affidavit that "unless locked in the open position the bed can snap shut upon the occupant under certain conditions of use likely to occur particularly with a child. It is opened from a couch to a bed by grasping the cross bar that becomes the outer end of the bed and pulling it out as far as it will go. This requires very little strength * * * but it does not lock in the open position unless this outer end of the bed is also lifted some 12 to 15 inches when fully extended. That requires more strength and would be difficult for a child of less than teen age unless he was quite robust."

If the case had gone to trial the plaintiff might have been able to produce evidence enough to satisfy a jury, as a matter of reasonable probability, that the bed was dangerous; that the defendant knew, or from facts known to him should have realized, that it was likely to be dangerous; that he had no reason to think the purchaser would realize the danger; that he made no reasonable effort to give warning of the danger; and that the danger caused the boy's death. Reasonable doubts might well have remained, but a civil case need not be proved beyond reasonable doubt. A fair preponderance of the evidence, a fair balance of probability, is all that is required. Rule 56(c), F.R.Civ.P., provides that a summary judgment shall be rendered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Rule "authorizes summary judgment only where * * * it is quite clear what the truth is, * * * the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Sartor v. Arkansas Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967. And "doubts as to the existence of a genuine issue of a material fact must be resolved against the party moving for summary judgment." Dewey v. Clark, 86 U.S.App.D.C. 137, 143, 180 F.2d 766, 772. In this case "the pleadings, depositions, and admissions on file, to-

gether with the affidavits" do not make "clear what the truth is." Genuine issues of negligence, causation, and damages remain to be tried.

Reversed.

**WILBUR K. MILLER, Chief Judge (dissenting).**

Mazor Masterpieces sold and delivered the sofa bed to Mrs. Edwards on July 12, 1954. It is undisputed that instructions for its operation were attached. Mrs. Edwards operated it without difficulty on the day of delivery and on numerous occasions during the ensuing four years. She said she never noticed any difficulty "in the way it pulled out or was made up." Her son, who was 12 years old in 1958 and "quite tall for his age," had watched her open the sofa bed on several occasions. It was used as a bed quite a number of times without any untoward incident. But, on July 9, 1958, approximately four years after the purchase, on coming home from work late in the afternoon, Mrs. Edwards discovered the dead body of her son enclosed in the sofa bed, which was almost closed.

On July 8, 1959, Mrs. Edwards sued Mazor Masterpieces, the vendor, to recover damages for the death of her son, charging negligence and breach of warranty. She did not sue the manufacturer. She alleged three acts of negligence as the proximate cause of the death: (a) the act of selling a sofa bed "which was unsafe, defective and not fit for the use intended"; (b) the act of failing to warn her of the "inherent danger"; and (c) the act of failing to "give instructions as to its use."[1]

Mazor moved for summary judgment. Depositions and affidavits filed in connection with the motion show that allegation (c) did not tender a genuine issue of material fact for two reasons: (1) although Mrs. Edwards said she did not recall any directions that came with the sofa bed, it was shown without dispute that instructions for its operation were attached to the bed itself; (2) Mrs. Edwards did not need any instructions other than those she probably received at the time of purchase, because she had no difficulty in converting the sofa bed into a bed many times during the four years after its purchase.

I suggest allegation (a) is an attempt to state a claim for breach of warranty.[2] Such an action was barred by the three-year statute of limitations, as the sale and implied warranty were made July 12, 1954, and the suit was filed July 8, 1959. Perhaps that is why breach of warranty is not mentioned in the majority opinion. Allegations (a) and (b), taken together, charge the defendant was negligent in selling an inherently dangerous sofa bed without warning the purchaser of the possibility of danger, and that such negligence was the proximate cause of the death.

Mrs. Edwards appeals from the order of the District Court granting Mazor's motion for summary judgment. The majority reverse, erroneously I think, and I dissent. The error seems to spring from the fact that the majority confuse a motion for summary judgment with a mo-

---

1. The exact allegations of the complaint are:

"4. The direct and proximate cause of the plaintiff's decedent's death was due to [sic] the negligence and carelessness of the defendant in selling the aforementioned sofa bed which was unsafe, defective and not fit for the use intended, and further, the defendant failed to give warning of the inherent danger of said sofabed [sic], failed to give instructions as to its use and the defendant was otherwise negligent.

"5. Furthermore, the warranty and representation of the defendant as to the said sofabed was not true, as the sofa bed was not suitable and reasonably fit for the use intended and same was designed and constructed inadequately and was highly dangerous to life and limb.

"6. Plaintiff relied upon the skill and judgment and upon defendant's warranty in purchasing the sofa bed."

2. The quotation from the complaint, set forth in footnote 1, shows that Mrs. Edwards intended to charge breach of warranty as well as negligence.

tion to dismiss for failure to state a claim upon which relief can be granted. Although no motion to dismiss was made, the majority discuss the case as though there had been, and thus decide a question which was not presented. They conclude that the complaint, like Form 9, is "sufficient under the rules," [3] that is to say, is sufficient to withstand a motion to dismiss for failure to state a claim upon which relief can be granted.

Then the majority say of the complaint: "Like Form 9, it pleads no evidence." Of course it was unnecessary that the complaint plead evidence; but that does not mean the complaint alone is enough to withstand a motion for summary judgment. The plaintiff must sufficiently disclose what the evidence will be to show there is a genuine issue of fact to be tried. Surkin v. Charteris, 5 Cir., 1952, 197 F.2d 77.

This court quoted with approval, in Christianson v. Gaines,[4] the following clear statement of the Ninth Circuit in Lindsey v. Leavy, 1945, 149 F.2d 899, 902:

"'The sufficiency of the allegations of a complaint do not determine the motion for summary judgment. Cases dealing with and construing Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, clearly indicate to the contrary and if this were not

the case, Rule 56 would be a nullity for it would merely duplicate the motion to dismiss.'"

Thus it seems clear that, even though a complaint states a cause of action, the defendant will be entitled to summary judgment, unless the plaintiff discloses evidence which will show a genuine issue of fact.

With this principle in mind, I suggest that on the motion for summary judgment two questions were to be determined from the affidavits and other materials before the court: (1) whether the defendant was negligent, and (2) if so, whether the defendant's negligence was the proximate cause of the death.

The rule is that the vendor can be held liable for negligence in selling a chattel, the use of which resulted in bodily harm, only if he knew, or from facts known to him should have realized, that the chattel was, or was likely to be, dangerous for the use for which it was supplied.[5] It can hardly be said that, from events which occurred in 1958, Mazor Masterpieces knew in 1954, or from facts then known to it should have realized, that the sofa bed was dangerous. Proof that Mazor had such knowledge in 1954 is a critical link in the chain of facts which plaintiff's papers had to show in order to demonstrate negligence, even if the sofa bed was in fact dangerous.

It may be conceded that the papers supporting and opposing the motion for

---

3. See Rule 84 of the Federal Rules of Civil Procedure.

4. 1949, 85 U.S.App.D.C. 15, 17, 174 F.2d 534, 536.

5. Sections 388 and 399 of Restatement, Torts (1934), are as follows:
"§ 388. Chattel Known to be Dangerous for Intended Use.
"One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;
"(b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and
"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."
"§ 399. Chattel Known to be Dangerous.
"A vendor of a chattel, manufactured by a third person, who sells it knowing that it is, or is likely to be dangerous, is subject to liability as stated in §§ 388 to 390."

summary judgment raised an issue of fact as to whether the sofa bed was dangerous. I do not agree, however, that the papers raised an issue of fact as to whether Mazor knew in 1954 that the bed was dangerous or that it then knew facts from which it should have realized it. As the basis for its conclusion that such an issue was raised, the majority say:

" * * * In answer to appellant's interrogatory 28, 'Are there any safeguards to prevent the sofa bed from closing after it is opened from its closed position?' appellee said: 'Yes, when it is fully open for use.' In answer to interrogatory 29, 'If the answer to 28 is yes, describe these safeguards and furnish diagrams and pictures as to its construction', appellee said: 'It locks when open full for use.' These answers suggest that appellee may have known there was nothing to prevent the bed from closing when it was partly but not fully opened."

This seems to me to be a slender reed upon which to hang a finding that Mazor knew the bed was inherently dangerous. The fact that "there was nothing to prevent the bed from closing when it was partly but not fully opened" does not necessarily stamp the bed as inherently dangerous. It was not intended to be used as a bed when not fully open; its use in that manner was not "the use * * * for which * * * it is supplied." While the instructions attached to the sofa bed are not in the record, I have no doubt that the user was instructed to open it fully into a locked position in order to prepare it for use as a bed. So, I think it fair to say that, even if Mazor knew in 1954 that "there was nothing to prevent the bed from closing when it was partly but not fully opened," it does not follow the defendant should have realized then that the bed was "inherently dangerous," simply because an occurrence and experiments four years later may have shown it was. As Mr. Justice Holmes said in The German-

ic, 1905, 196 U.S. 589, 595–596, 25 S.Ct. 317, 318, 49 L.Ed. 610:

" * * * [N]egligence must be determined upon the facts as they appeared at the time and not by a judgment from actual consequences which then were not to be apprehended by a prudent and competent man. * * * "

Mrs. Edwards charged that Mazor's negligence in selling the bed without warning of its inherent danger was the "direct and proximate" cause of the boy's death. As I have said, her mere allegation to that effect was not enough to defeat Mazor's motion for summary judgment. She had to demonstrate a genuine issue of fact as to proximate cause, in addition to other essentials, in order to prevail over the motion.

If, as the majority hold, genuine issues of material fact were disclosed by the moving and opposing papers as to (a) whether the bed was inherently dangerous and (b) whether Mazor knew of, or from facts known to it should have realized, the inherent danger, and was therefore negligent in selling an inherently dangerous bed without warning the purchaser of the danger, it does not follow that such negligence was the proximate cause of the tragedy. The boy's death was not the reasonable and probable consequence of the negligence charged to Mazor by the court's opinion, because the death in 1958 could not have been foreseen or reasonably anticipated by Mazor merely because it knew in 1954 there was nothing to prevent the sofa bed from closing when it had been partly opened, but not fully put into position for use as a bed.

Many years ago, after noting that the determination of the proximate cause of an injury is ordinarily for the jury, the Supreme Court said in Milwaukee & St. Paul Railway Co. v. Kellogg:[6]

" * * * [I]t is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the

6.  1876, 94 U.S. 469, 475, 24 L.Ed. 256.

proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. * * * "

This means, I think, that the determination of proximate cause should not be submitted to the jury unless it affirmatively appears that the injury was the natural and probable consequence of the negligence and that it ought to have been foreseen.

This interpretation was given to the above excerpt by the Supreme Court in 1943 [7] when, after quoting the same language from the Milwaukee case, it said:

"* * * Events too remote to require reasonable prevision need not be anticipated. * * * The mere fact that with a sound rail the accident might not have happened is not enough. The carrier's negligence must be a link in an unbroken chain of reasonably foreseeable events."[8]

Judge Sanborn, speaking for the Eighth Circuit in Cole v. German Savings & Loan Soc.,[9] succinctly defined proximate cause, and the natural and probable consequences of an act, as follows:

"An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either the remote cause, or no cause whatever, of the injury. * * * A natural consequence of an act is the consequence which ordinarily follows it—the result which may be reasonably anticipated from it. A probable consequence is one that is more likely to follow its supposed cause than it is to fail to follow it. (Cases cited.]"

Measured by these criteria, the defendant's acts, even if negligent, were not actionable.

There is some difference of opinion among state courts and among text writers as to the soundness of this so-called "foreseeability" rule, but it is generally followed in federal decisions, including our own. For example, in Howard v. Swagart, 1947, 82 U.S.App.D.C. 147, 151, 161 F.2d 651, 655, we said:

"* * * Dealing with the causation aspect first, this court has defined the proximate cause of an injury to be 'that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred.' S. S. Kresge Co. v. Kenney [66 App.D.C. 274, 86 F.2d 651 (1936)]."

In the Howard case a woman whose car had been struck by an automobile unlawfully taken from a parking garage by one of its employees, sued its owner and Swagart and Hartig, the owners of the garage. She argued the latter were negligent in failing to remove the ignition key from the parked car, in employing the offending attendant without investigating him, and in failing to provide and maintain adequate supervision and control over the cars left in their custody. We said appellant's injury could not be held to be the "natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of attending circumstances," and cited the Milwaukee case.

---

7. Brady v. Southern Ry. Co., 320 U.S. 476, 483–484, 64 S.Ct. 232, 236, 88 L.Ed. 239.

8. The Brady case involved the Federal Employers' Liability Act. In my judgment the principle is the same as in the present case.

9. 1903, 124 F. 113, 115, 63 L.R.A. 416.

In Johns-Manville, Inc. v. Pocker, 8 Cir., 1928, 26 F.2d 204, 207, the court said:

"Ordinarily the question of proximate cause is * * * for the jury, but where, as here, there was no substantial evidence in the record upon which to base a finding upon this question in favor of plaintiff, the court should instruct a verdict for defendant. [Cases cited.]"

See also Reynolds v. Atlantic Coast Line R. Co., 5 Cir., 1952, 196 F.2d 643, 646; Shepard v. Denver Tramway Corp., 10 Cir., 1932, 62 F.2d 339, 340.

If I am wrong in thinking the "foreseeability" rule applies here, and in concluding Mazor's assumed negligence could not have been the proximate cause of death, it is nevertheless true that the papers show only that Mazor's alleged negligence *may have been* the proximate cause; for the circumstances shown are equally consistent with some other proximate cause. In that situation, a jury could only speculate as to what the proximate cause really was.

For example, either murder or suicide was a possible cause of the death, no matter how remote those possibilities may seem, and it was incumbent on Mrs. Edwards to exclude them in her papers opposing the motion for summary judgment. The fact that such exclusion may have been very difficult if not impossible does not justify the adoption of her inference that Mazor's alleged negligence was the proximate cause. It merely emphasizes the speculative nature of her theory, and tends to show it was practically impossible for her to withstand the motion for summary judgment.

While it was not necessary that the complaint negate all possible causes of death other than that which it pleaded, the situation was quite different on the motion for summary judgment. Then it was essential that Mrs. Edwards point to evidence to exclude other possibilities; for, as we said in Brown v. Capital Trans-it Co., 75 U.S.App.D.C. 337, 338, 127 F.2d 329, 330, certiorari denied 1942, 317 U.S. 632, 63 S.Ct. 61, 87 L.Ed. 510: "If causes other than the negligence of the defendant might have produced the accident, the plaintiff is bound to exclude the operation of such causes by a fair preponderance of the evidence." To the same effect is Taylor v. Crane Rental Co., 1958, 103 U.S.App.D.C. 13, 254 F.2d 350.

The rule is that the defendant should have summary judgment if, on the proof as shown by the papers, a directed verdict for the defendant would be required. In Christianson v. Gaines, supra, we adopted the view that

" 'The principle seems to be that if, under the facts developed, the court at a trial would be required to direct a verdict for the moving party, then a summary judgment should be entered.' Miller v. Hoffman, D.C., 1 F.R.D. 290, 292." [85 U.S.App.D.C. 15, 174 F.2d 536.]

Again, we said in Dewey v. Clark,[10] "To support summary judgment the situation must justify a directed verdict insofar as the facts are concerned." The Ninth Circuit said, in Byrnes v. Mutual Life Ins. Co.:[11]

" * * * If the testimony presented by the affidavits is such that a directed verdict would have to be granted, the court is justified in granting summary judgment unless affirmative testimony is offered to discredit the testimony. * * * "

Unquestionably, I think, a directed verdict would follow if the evidence at trial did not exclude all possible causes of death except that postulated by the plaintiff. Since there was not even a promise of such exclusionary evidence, summary judgment was properly granted, even if the foreseeability rule does not apply. It will not do to say it should be left to the jury to decide whether Mrs. Edwards's inference was to be accepted over all other possibilities permitted by the evidence, for that would leave causation

10. 1950, 86 U.S.App.D.C. 137, 143, 180 F.2d 766, 772.

11. 1955, 217 F.2d 497, 501.

entirely to conjecture, and would disregard the elementary principle that the causative effect of defendant's negligence must be proved.

Mazor's knowledge in 1954 that the sofa bed was inherently dangerous was admittedly an essential element to be proved in establishing negligence. As this element does not appear from the papers, and as the defendant's presumed negligence was not shown to be the proximate cause, I think summary judgment was properly granted.