Marguerite **JAMIESON** et al., Appellants,

v.

**WOODWARD & LOTHROP** et al.,
Appellees.

No. 13017.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 31, 1957.

Decided April 16, 1957.

---

1. 23 Stat. 258 (1884), 5 U.S.C.A. § 261.

Messrs. Irving G. McCann and Benjamin H. Dorsey, Washington, D. C., for appellants.

Mr. Frank J. Martell, Washington, D. C., with whom Messrs. Richard W. Galiher and William E. Stewart, Jr., Washington, D. C., were on the brief, for appellees.

Before EDGERTON, Chief Judge, and PRETTYMAN, WILBUR K. MILLER, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges, sitting *en banc*.

PRETTYMAN, Circuit Judge.

Appellant, Mrs. Marguerite Jamieson, bought from Woodward & Lothrop, a department store, an elastic exerciser manufactured by Helena Rubinstein, Inc., which she had seen advertised in a magazine. She bought by brand name, "Lithe-Line", and no special instructions as to use were given her by the vendor's salesperson. While she was using the exerciser she suffered a sudden unconsciousness, and although she testified she did not know what happened it appears to be a reasonable inference that the exerciser slipped and struck her in the eye. She sued Woodward & Lothrop for breach of warranty and Helena Rubinstein, Inc., for negligence. The defendants answered. Appellant's deposition was taken, and in the course of it the exerciser in question and the printed instructions given with it were introduced as exhibits. The District Court, on the basis of the complaint, the answers, the deposition, and the exhibits, granted summary judgment for the defendants. This appeal followed.

The court is in agreement in affirming the District Court in respect to the vendor, Woodward & Lothrop. The statute[1] provides: "In the case of a contract to sell or sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." Since the sale occurred in the District of Columbia, and since Mrs. Jamieson relied solely on the claim of breach of implied warranty, it is clear that she is barred by the quoted language, unless perhaps she can in some way remove herself from the scope of the statute. Nothing in the record or argument would in our view suggest or support any such possibility.

The court is divided in its view of the judgment in favor of the manufacturer, Helena Rubinstein, Inc. A majority agree with the District Court, and so the judgment will be affirmed.

The theory of the plaintiff as to the manufacturer, as set forth in her complaint, was that the exerciser was inherently dangerous and that the manufacturer had failed to warn or otherwise protect her against such danger. In answer to an interrogation she said that when the solid rubber rope is sub-

1. 50 Stat. 32 (1937) D.C.Code § 28–1115 (1951).

jected to stress, as in an exercise, great potential striking power is created; that the rope "can depart from the instep" in the course of an exercise; and that no safety or protective device was provided and no warning given.

The exerciser in question was an ordinary rubber rope, about the thickness of a large lead pencil, about forty inches long, with loops on the ends. It had no imperfections or defects whatsoever and no added gadgets. It never broke or went awry. It was a simple elastic exerciser. With the rope came a set of "Instructions". These consisted of a series of eight silhouette sketches of exercises to be done with the rope, with a summary description of each exercise. There were no instructions as to how to operate the device; there was no device to operate, the article in question being merely a rubber rope. In appearance it resembled a child's skipping rope.

In the course of her program Mrs. Jamieson began one of the most normal and natural of exercises. She lay down on the floor, put the rope under her feet, held on to the handles, and, with knees stiff, raised her feet straight up, intending then to lower them and so, alternately raising and lowering them, to give her body muscles a workout. Apparently the rope slipped off the soles of her feet and hit her in the eye. She suffered a serious injury.

■ The unfortunate event was an accident, we think,—an event so natural that responsibility for it is by common consent not ascribed to fault. Of course one is truly sorry for the unfortunate victim of a chance accident, but the premise of pecuniary liability for tort is not the fact of injury but is negligence.

■ Problems in this field of the law have grown in recent years coincident with the tremendous growth in the use of manufactured articles and mechanical devices. Many cases in many jurisdictions have dealt with phases of the general subject, and the law has progressed since the opinion of the Court of Appeals of New York in MacPherson v. Buick Motor Co.[2] finally demolished the already breached barrier of no-privity of contract which theretofore lay across the path of a user to a manufacturer. Eminent authorities, notably Professor Dillard of the University of Virginia[3] and Professor James of Yale,[4] have written extensive articles on the subject.[5] The Restatement of the Law of Torts deals with it.[6] It may now be taken as settled that a user of a manufactured device may under some circumstances recover against the manufacturer for negligence.

Culpable negligence of a manufacturer may arise from a number of causes. There may be an impropriety or a misadventure in the manufacturing process which results in a defective product. There may be negligence in design or plan. The cause of action in the case at bar does not arise from any of these. It arises, as we have said, from alleged negligence in failing to warn or otherwise protect the user in the use of the article.

There are on the market vast numbers of products as to which the law holds the manufacturer to a duty to warn of foreseeable dangers or to provide safeguards against such dangers. But there are also on the market vast

2. 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696 (1916).

3. Dillard and Hart, Product Liability: Directions for Use and the Duty to Warn, 41 Va.L.Rev. 145 (1955).

4. James, Products Liability, 34 Texas L. Rev. 44, 192 (1955).

5. Wilson, Products Liability, 43 Calif.L.

Rev. 614, 809 (1955); Miller, Manufacturers' Product Liability, 24 N.Y.S.B.A. Bull. 313 (1952); Clark, Let The Maker Beware, 19 St. John's L.Rev. 85 (1945). See also Comment, Manufacturer's Liability for Patently Dangerous Instrumentalities, 15 Albany L.Rev. 196 (1951).

6. Restatement, Torts §§ 388–402 (1934).

numbers of potentially dangerous products as to which the manufacturer owes no duty of warning or other protection. The law does not require that an article be accident-proof or incapable of doing harm. It would be totally unreasonable to require that a manufacturer warn or protect against every injury which may ensue from mishap in the use of his product. Almost every physical object can be inherently dangerous or potentially dangerous in a sense. A lead pencil can stab a man to the heart or puncture his jugular vein, and due to that potentiality it is an "inherently dangerous" object; but, if a person accidentally slips and falls on a pencil-point in his pocket, the manufacturer of the pencil is not liable for the injury. He has no obligation to put a safety guard on a lead pencil or to issue a warning with its sale. A tack, a hammer, a pane of glass, a chair, a rug, a rubber band, and myriads of other objects are truly "inherently dangerous", because they might slip. They cause accidents and injury even more often, we expect, than do rubber exercisers. But the doctrines fashioned by the law for inherently dangerous objects do not encompass these things. A hammer is not of defective design because it may hurt the user if it slips. A manufacturer cannot manufacture a knife that will not cut or a hammer that will not mash a thumb or a stove that will not burn a finger. The law does not require him to warn of such common dangers. On the other end of the spectrum of practicalities, a manufacturer should not be permitted to market without protection to the user a spray which would kill trees if used at the wrong time, as in McClanahan,[7] or a skirt which would otherwise ignite if brushed by a lighted cigarette, as in Noone.[8] A manufacturer might be liable for failure to provide a shield or an emphatic warning to users of an electric power saw, but he would not be liable if he failed so to provide in respect to a kitchen knife.

If a hand slips in a normal operation with a non-defective device, a knife will cut and a lighted stove will burn and an automobile will crash into a tree; but no authority holds that manufacturers must warn of such contingencies. All this is firmly established commercial law and custom. We doubt that any book of instructions given with a car warns that, if a user accidentally steps on the accelerator instead of on the brake, he may be hurt; nevertheless, so far as we are able to ascertain, no case has yet held the manufacturer liable under such circumstances.

In respect to necessary warning the Supreme Court said many years ago, in a case from this jurisdiction:

"In other words, as stated by the Maine court, 'No one needs notice of what he already knows,' and 'Knowledge of the danger is equivalent to prior notice.' "[9]

The latest extensive judicial discussion of the matter seems to be in Campo v. Scofield,[10] the opinion being by the unanimous Court of Appeals of New York, the same court which decided MacPherson v. Buick Motor Co., supra. A farmer was feeding onions into a

---

7. McClanahan v. California Spray-Chemical Corp., 194 Va. 842, 75 S.E.2d 712 (1953).

8. Noone v. Fred Perlberg, Inc., 268 App. Div. 149, 49 N.Y.S.2d 460 (1944), affirmed 294 N.Y. 680, 60 N.E.2d 839 (1945). Cf. Frank R. Jelleff, Inc., v. Braden, 98 U.S.App.D.C. 180, 233 F.2d 671 (D.C.Cir. 1956).

9. District of Columbia v. Moulton, 182 U.S. 576, 581, 21 S.Ct. 840, 45 L.Ed. 1237 (1901). See James, supra note 4, at 55.

10. 301 N.Y. 468, 95 N.E.2d 802 (1950). This case has been the subject of much comment. See, e. g., Miller, Manufacturers' Product Liability, 24 N.Y.S.B.A. Bull. 313, 317 (1952); 15 Albany L.Rev. 196, 299 (1951); 17 Brooklyn L.Rev. 349 (1951); 1 Buffalo L.Rev. 169 (1951); 35 Minn.L.Rev. 608 (1951); 2 Syracuse L.Rev. 394 (1951). See also Poretz v. R. H. Macy & Co., 119 N.Y.S.2d 211 (N.Y. Sup.Ct.1953).

machine. His hand slipped and was caught in the rollers. He sued upon the theory that the manufacturer was negligent in not providing guards. The court, holding that the complaint failed to state a cause of action in negligence, discussed the problem at length. The gist of the holding is that a manufacturer is under no duty to protect the user against a danger which is perfectly obvious. The pertinent quotable portions of the opinion are much too long to recite here; two short statements must suffice. The court said:

"If a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands. We have not yet reached the state where a manufacturer is under the duty of making a machine accident proof or foolproof."[11]

And again the court said:

"To impose upon a manufacturer the duty of producing an accident-proof product may be a desirable aim, but no such obligation has been—or, in our view, may be—imposed by judicial decision. Suffice it to note that, in cases dealing with a manufacturer's liability for injuries to remote users, the stress has always been upon the duty of guarding against *hidden* defects and of giving notice of *concealed* dangers."[12]

In another recent case, Blissenbach v. Yanko,[13] a woman bought an electric steam vaporizer. The manufacturer did not warn her that if the device was accidentally upset while in operation somebody might be scalded. The vaporizer was upset, and a child was scalded. The Court of Appeals of Ohio reversed a judgment for the plaintiff based upon a jury verdict and, in holding that a verdict for the defendant should have been directed, said in part:

"A vaporizer is not such a dangerous instrumentality. It has an important place in the field of modern therapy. The question in this case is the operation of the vaporizer itself. It is not per se a dangerous instrument. It is an instrument of dangerous potentialities if carelessly used. Care must be proportioned to the danger to be avoided. It was not fool proof. * * *

"Plaintiff's mother knew when she purchased the vaporizer that she was purchasing a loose lid vaporizer of simple construction. It was not intended that the top should remain intact at all times. The lid was made to be easily removable, and its weight was all that held it in place."[14]

The Fifth Circuit held that, where a person splashed some cleaning agent in a sink so that it flew up into her eye, the manufacturer was not liable.[15] There was no duty to warn that a cleaning agent is not intended for use in the eye or that a liquid, if spilled, may splash into the eye. The books contain many other illustrations of this rule.[16]

11. 95 N.E.2d at page 804.

12. Ibid. In this connection see Miller, Manufacturers' Product Liability, 24 N.Y.S.B.A. Bull. 313, 317–318 (1952).

13. 90 Ohio App. 557, 107 N.E.2d 409 (1951).

14. 107 N.E.2d at page 411.

15. Sawyer v. Pine Oil Sales Co., 155 F.2d 855 (1946).

16. In Crandall v. Stop & Shop, 288 Ill. App. 543, 6 N.E.2d 685 (1937), a lady was hit in the eye by a spring clamp which flew off a fruit salad jar when she opened it. The defendant retailer had provided no instructions on how to open the jar. In holding that as a matter of law there was no liability, the Appellate Court of Illinois said: "It is a matter of common knowledge that springs of this type are used on various types of jars * * *, and the ordinary experiences of life would require any person using them to exercise ordinary caution." 6 N.E.2d at page 687. In Yaun v. Allis-Chalmers Mfg. Co., 253 Wis.

The Restatement deals with this phase of the matter quite clearly. Stating the proposition affirmatively it says[17] that one who supplies a chattel for another to use is liable for bodily harm caused by the use in the manner for which it is supplied, if he (the supplier) "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition" and fails to give warning. And the authors comment:

> "One who supplies a chattel to others to use for any purpose is under a duty to exercise reasonable care to inform them of its dangerous character in so far as it is known to him or of facts which to his knowledge make it likely to be dangerous, *if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved therein.*" (Emphasis ours.)[18]

Neither an exact definition of liabilities nor a precise delineation of the boundaries is necessary in the present case. It seems clear under all or any of the cases or text authorities that, where a manufactured article is a simple thing of universally known characteristics, not a device with parts or mechanism, the only danger being not latent but obvious to any possible user, if the article does not break or go awry, but injury occurs through a mishap in normal use, the article reacting in its normal and foreseeable manner, the manufacturer is not liable for negligence. If a man drops an iron dumbbell on his foot the manufacturer is not liable.

The case at bar falls within the category just described.[19] The only "dangerous condition" was that a rubber rope is elastic and when stretched will, when released, return to its original length with some degree of force. Small boys know that fact and fashion slingshots upon the principle. Surely every adult knows that, if an elastic band, whether it be an office rubber band or a rubber rope exerciser, is stretched and one's hold on it slips, the elastic snaps back. There was no duty on the manufacturer to warn of that simple fact.

The "Instructions" given with this rope were simply an illustrated text depicting various exercises which might be performed with it. They were affirmative. No mechanism was involved. There were no instructions as to how to operate the device; there was no "operation" of a "device"; the only action was to stretch the rope and then relax the tension. The instructions showed in silhouette eight exercises to be done with the rope. They were the time-honored routine known to every high school gym class, a modern rendition of the old-time "Daily Dozen".

558, 34 N.W.2d 853 (1948), the Supreme Court of Wisconsin rejected the theory that a manufacturer is liable for failure "to exercise reasonable care in the adoption of a safe plan or design, where such failure renders said product imminently dangerous * * *, whether the danger be open or hidden." Yaun's arm was caught and crushed in the unguarded rollers of a baling machine. The court held that the danger from the exposed rollers was obvious to the operator of the baling machine and that the accident resulted from the operator's mistaken method of using the machine, not from an inherent defect. See De Eugenio v. Allis-Chalmers Mfg. Co., 210 F.2d 409 (3d Cir. 1954) and Allis Chalmers Manufacturing Company v. Wichman, 220 F.2d 426 (8th Cir.

1955), for cases involving a baler where the manufacturer's representatives demonstrated a dangerous method of operation at variance with the design and intended use. See also Walton v. Sherwin-Williams Co., 191 F.2d 277 (8th Cir. 1951); Rosebrock v. General Electric Co., 236 N.Y. 227, 140 N.E. 571 (1923).

17. Restatement, Torts § 388 (1934).

18. Id., comment on clause (b).

19. It was held in Heggblom v. John Wanamaker New York, 178 Misc. 792, 36 N.Y.S.2d 777 (1942), that the rubber exerciser there involved was not as a matter of law inherently dangerous. The suit was one brought against a retailer for both breach of warranty and negligence.

The one Mrs. Jamieson was doing was described thus:

"Tummy Flattener

"Lie on back. Place hands in loops of Lithe-Line. Place feet in middle; pull legs up and lower to ground."

While she was executing this simple maneuver the rope slipped off her feet. The "instructions" did not say that, if the rope, while stretched, slipped out of her hand or off her foot, it might hit her in the eyes, the nose, the mouth, or the ear, thereby possibly causing a detached retina, a chipped septum, a split lip which might become fatally infected, or a ruptured eardrum resulting in permanent deafness. But we are of clear opinion that the manufacturer cannot be held negligent for failing to give such instructions.

The reasonably foreseeable injury from a mishap with this rope was not great—a cut lip, bloody nose, or black eye, at the most. This lady's injury, a detachment of the retina in one eye, is not the sort of thing reasonably anticipated from the snapback of a rubber elastic of this sort. At the same time it is obvious that any injury to an eye may have dire consequences. So may a cut finger or a broken wrist. But we do not find in the authorities a doctrine that, if the injury ordinarily foreseen is relatively minor and so need not be warned against, a manufacturer must nevertheless warn against any dire unusual consequence which, also obviously, may ensue. Quite to the contrary it is well established that a manufacturer is not liable, unless serious bodily harm is reasonably foreseeable.[20] Of course, so far as foreseeability is concerned, not only may the usual be foreseen, but the unusual may often be foreseen as a re-

mote possibility. A manufacturer may foresee as a remote possibility that a metal decoration on a jewelry box may scratch one and cause an infection;[21] the heel of a lady's shoe may break at an inopportune moment, causing serious injury;[22] or that a stickpin may stab a man to the heart. Yet for these remote eventualities the law imposes no liability on the manufacturer. "Reasonably foreseeable" in the rule here applicable does not encompass the far reaches of pessimistic imagination.

It is argued that the criterion is "unreasonable risk of harm to users". One factor in that determination, which appears in all the authorities from the Supreme Court's Moulton opinion in 1901 to the Restatement of 1934 and the Campo case in 1950, is whether the manufacturer may reasonably expect that the user will realize the danger. Any article may slip in use; everybody knows that. We cannot hold a manufacturer negligent because he did not specifically warn that a simple article like a rubber rope might slip. Under such a rule what would we do with the infinite variety of household gadgets, work tools, garden appliances, and all the multitude of things which make up modern living and any of which may slip while being used?

█ It is argued that the extent and the impact of the rope's recoil were not obvious to the user. This argument means either it was not obvious to the lady that if the rope slipped it would hit her in the eye, or it was not obvious that if it did hit her in the eye the retina might be detached. But it is common knowledge that the distance and force of the recoil of an elastic are controlled by and proportional to the amount of tension placed upon it. If an eye, mouth or nose is in the path of the recoil it may be struck a blow. The force of the blow

**20.** Restatement, Torts § 395 (1934); Miller, Manufacturers' Product Liability, 24 N.Y.S.B.A. Bull. 313, 320 (1952).

**21.** Poplar v. Bourjois, 298 N.Y. 62, 80 N.E.2d 334 (1948). *But see dicta* in which the court apparently disagrees with the expression in Comment *b* under Section 395 of the Restatement, that "The important thing is the harm which it is likely to do if it is imperfect."

**22.** Timpson v. Marshall, Meadows & Stewart, 198 Misc. 1034, 101 N.Y.S.2d 583 (1950).

is determined by the tension placed upon the elastic by the person who stretched it, in this case the lady herself. These facts concerning impact and extent of recoil are obvious to everyone; certainly to a small boy using a slingshot. Therefore they need not be warned against. It is equally obvious that when a recoiling object strikes one in its path it will do some harm, in the ordinary case a slight bruise but in the highly unusual case a more serious injury. The injury in the case at bar falls within the latter category. In the language of the cases it was not "reasonably foreseeable" but, more accurately, was a remote contingency or an unlikely eventuality, as brought out above.

Surely a manufacturer is not negligent if he fails to utter a warning against a general possibility of danger, such as that if a rope slips some injury may result. And surely a manufacturer, to be protected from liability for negligence, need not enumerate the possible injuries which might befall one hit by the rope. We have in the case at bar a detached retina, but we might have had any one of an infinite number of injuries to eye, mouth, ear, nose, etc. We do not agree with, and find no authority to support, a holding either that a manufacturer must utter a general warning of danger from mishap with an article such as this rope or that he must catalog injuries possible upon such a mishap.

Everybody seems to agree that, if an ordinary knife slips and cuts the user—maybe cuts a finger off,—then as a matter of law the manufacturer is not liable. Our dissenting brethren put an ordinary knife on one side of the line and a power-driven rotary blade on the other side. They then err, it seems to us, when they put this simple rubber rope on the side of the electric rotary blade. It belongs on the side of the ordinary knife. This was not a whirling, mechanical apparatus. Indeed it was not nearly as inherently dangerous as is an ordinary knife.

The illustrative example makes manifest the error.

We agree that Virginia law applies here, and on that subject the dissent has much to say about the opinion in McClanahan, supra. But that case does not remotely resemble this one and, moreover, does not advance the extreme doctrine now urged upon us. The case involved a spray for apple trees. If used too late in the season, when a scab disease was too far advanced, the spray would kill the trees. That contingency was not patent even to experts. The manufacturer furnished a set of instructions, which gave the correct time for application but failed to warn of the results of a too-late application. There is in Virginia a statute relating to sales of insecticides, fungicides and rodenticides. Code 1950, § 3–198 et seq. That statute contained a provision relating to necessary warnings or cautions. The opinion of the court was an interpretation of that provision. The court adverted to some of the basic common-law principles of negligence liability. It in no way approached the problem now before us. The text of the opinion shows that the learned justice did not have our problem in mind in any respect. The cases cited and quoted by him confirm that view. His quotation from Cooley [23] is from a discussion of basic rules of negligence. The idea entertained by Mr. Cooley is clearly indicated by a statement from the same section from which the Virginia court quoted. Speaking of "imminently dangerous" articles Mr. Cooley says, "The same principle has been applied to a gun, which *if defective* is an article imminently dangerous to human life." (Emphasis supplied.) The Sadler case [24] concerned an employer's liability to an employee, and the quoted rule contained an exception for dangers "such as the servant knew or ought to have known about." That seems to be the Virginia rule. The American Oil Co. case [25] dealt with concealed defects;

---

23. 3 Cooley, Torts § 498 (4th ed. 1932).
24. Sadler v. Lynch, 192 Va. 344, 64 S.E. 2d 664 (1951).

25. American Oil Co. v. Nicholas, 156 Va. 1, 157 S.E. 754 (1931).

Maize [26] with a cleaning fluid inadequately labeled; Farley [27] treats of sales of an article dangerous to a person "who has no knowledge of its true character"; Rosebrock [28] dealt with concealed packing blocks in a transformer; Highland Pharmacy [29] with a solution of silver nitrate labeled "witch-hazel"; and Genesee County [30] states the rule, "the danger not being known to the purchaser and the danger not being patent".

The article in the Virginia Law Review by Professor Dillard and Mr. Hart, to which we have referred, is an analysis and critique of the McClanahan case— "to locate this particular case in the broader context of that liability."[31] They offer Noone v. Fred Perlberg, Inc., supra, as perhaps the best statement of the modern rule. In that case the court said, in so far as here pertinent, that a manufacturer is liable if he sells an inherently dangerous article without notification of the danger, "the danger not being known to the purchaser and not patent". The authors of the Virginia Law Review article say "The problem is one of judging the defendant's duty in light of the general circumstances that prevail in the area of expected use." [32] They conclude that McClanahan announced no novel or sweeping doctrine likely to embarrass a careful manufacturer but rather serves to call attention to the intrinsic importance of the common-law and statutory rules as to warnings. It is perfectly clear that these authors did not deem McClanahan to contemplate in any way the problem we have in the present case. And it clearly appears that they would conclude from the governing principles they recite that a manufacturer has no duty to warn of the obvious danger of a mishap in the ordinary use of an uncomplicated and non-defective article.

A more recent Virginia case affords insight into the thinking of the Supreme Court of Appeals in the McClanahan case and better understanding of its general approach to tort problems. In Olds v. Wood [33] the same judges, less one, who decided McClanahan reversed a judgment upon verdict for a plaintiff. The plaintiff's husband had purchased a bottle of shampoo from the defendant manufacturer. The directions on the bottle set out the usual instructions for shampooing and advised the user to "Heat until warm". There was no warning as to possible dangers in the use of the product according to instructions. The husband gave his wife a shampoo and dried her hair with a towel. He was combing the hair back from her face when she put a cigarette in her mouth and struck a match "at arms length in front of her". There was a flash of flame which enveloped her hair and clothing. She sued for personal injuries, claiming that the defendant failed to use due care in manufacturing and selling a product which was inherently and imminently dangerous in normal use and in failing to give proper and complete instructions on its use. At trial it was agreed by expert witnesses that the flash point of this shampoo was 171 or 172 degrees Fahrenheit. It was also agreed that at that temperature the shampoo would have been too hot to apply with comfort, and plaintiff did not testify to any discomfort. The defendant's expert witness, a chemist, gave uncontradicted testimony that under the circumstances described by the plaintiff and her husband the liquid in question could not have ignited and caused the

26. Maize v. Atlantic Refining Co., 352 Pa. 51, 41 A.2d 850, 160 A.L.R. 449 (1945).

27. Farley v. Edward E. Tower & Co., 271 Mass. 230, 171 N.E. 639, 86 A.L.R. 941 (1930).

28. Rosebrock v. General Electric Co., 236 N.Y. 227, 140 N.E. 571 (1923).

29. Highland Pharmacy v. White, 144 Va. 106, 131 S.E. 198, 44 A.L.R. 1478 (1926).

30. Genesee County Patrons Fire Relief Ass'n v. L. Sonneborn Sons, 263 N.Y. 463, 189 N.E. 551 (1934).

31. Supra note 3, at 148.

32. Id. at 162.

33. 196 Va. 960, 86 S.E.2d 32 (1955).

fire. The Supreme Court of Appeals rejected both of plaintiff's theories of negligence, stating that the uncontradicted testimony of the defendant's expert witness proved the product was not inherently dangerous, that the mere happening of the accident was no proof of negligence, and that plaintiff failed to produce affirmative preponderating proof of negligence. According to the directions on the bottle this substance was to be heated, often and naturally over an open flame, and its normal use would be in the vicinity of stoves, fireplaces, and lighted cigarettes. The flash point was 172 degrees, a notably low point, well below the boiling point of water. An extra moment on the stove could bring the substance above this temperature. It cannot seriously be contended that, in a jurisdiction where such a substance is not regarded as inherently dangerous and need not be accompanied by warnings, a simple rubber rope, the dangerous properties of which are well known even to a child, is inherently dangerous and must be warned against. The Olds case seems to make clear beyond question that the basic discussion of tort law by the same court in McClanahan cannot be read to cover the case at bar.

Professor James appears to be a proponent of the rules most liberal toward plaintiffs, but, even so, it seems clear enough that he would not find liability in the case at bar. Throughout his article [34] he emphasizes that a manufacturer must protect users against "unreasonable risk of harm". At one point he relates the factor of obviousness to this risk, saying:

"(a) *Obviousness of the danger, including the likelihood that it will be appreciated.* This is a factor which diminishes the likelihood of danger and militates against the need for precautions. The sharpness of knives and axes, or the tendency of unpacked fresh meat to spoil are so notorious that a warning could be expected to add nothing useful to the perception gained from one's senses and the knowledge common to all men. Nor does any alternative feasible precaution suggest itself. People generally can and do protect themselves against the dangers; thus they are not unreasonable ones." [35]

Then, rejecting the theory that there is never a duty to guard against a patent danger, the author nevertheless concludes:

"Under this analysis the obviousness of a condition will still preclude liability if the obviousness justifies the conclusion that the condition is not unreasonably dangerous; otherwise it would simply be a factor to consider on the issue of negligence." [36]

Professor James points out that obviousness of a danger diminishes the likelihood of injury and militates against the need for precautions. He urges, candidly against much authority, that a general rule that an obvious danger requires no safeguard is too broad. But obviousness, in his view, would preclude liability if the condition is so obvious as not to be "unreasonably dangerous". His thesis, he emphasizes, would not make manufacturers insurers or require foolproof machinery. "As it is," he says, "manufacturers must use care to provide a reasonably safe design, but it would be absurd to say that this requires foolproof plans." [37] With regard to warnings Professor James cites the Restatement and states: "When a dangerous condition is fully obvious and generally appreciated nothing of value is added by a warning." [38]

Appellant makes reference to the possibility of safeguards. The District Court referred to this possibility but pointed out, correctly, that nothing whatever was offered as a fact or as an issue

34. Supra note 4.

35. Id. at 51.

36. Id. at 52.

37. Id at 53.

38. Id. at 55.

of fact to indicate the desirability or feasibility of additional accessories to the rope or a different type of rope. Nothing offered the court tended to suggest that flapping stirrups or midway loops would create less rather than more danger. And nobody ventured to suggest as a fact that a flat elastic might slip out of a hand less easily than a rope-shaped line. Plaintiff tendered no issue of fact on this topic; a motion for summary judgment had been made, and she was opposing it; she should have posed a genuine issue of material fact as to the reasonableness and feasibility of a safeguard if she wished to make that contention. It was not necessary that her evidence be proffered, but faced with a motion for summary judgment she had to raise an issue of fact.[39] The District Judge who heard this case is well aware of the rules of procedure.

It is urged that a contest of the sort here involved can just as well be submitted to a jury, without a prior determination of possible liability on the part of the defendant. There is in some sociological circles a philosophy that the burden of damages suffered in accidents with manufactured articles ought to be widely spread, by way of the manufacturer and his available insurance, such as is the plan widely adopted in respect to injuries suffered in employment.[40] But such a plan ought to be adopted, if it is to be adopted, by the voice of the people generally, expressed by the legislative branch of the government. It ought not be imposed by the judicial branch. To be sure, there are many respects in which the development of the common law calls for reexamination and change by the courts. The advances made by the courts in this very field by cases such as Huset[41] and MacPherson, supra, are illustrations. But so sweeping a change in commercial liability as

the change just mentioned is not within that area. We must, when appropriate procedural demands have been made, determine at the outset of an action whether a possible liability in law of the defendant has been indicated by the plaintiff. This is a concept basic in our jurisprudence. It is established, firmly and correctly, that if a defendant has violated no legal obligation, his liability for pecuniary damages must not be submitted to the possible prejudices, sympathies or whims of a lay jury. His basic liability is first to be tested as a matter of law by the judge. In the case at bar the judge did not rule on the pleadings alone. The plaintiff's deposition was in, and so were the pertinent exhibits. If there is no possible liability in law, and no genuine issue of material fact exists, the established practice is summary judgment.

Since the rope in the case at bar was without defect or accessory gadgets and did not break or fail in any manner, no fault, and surely no negligence, can be ascribed to the manufacturer merely because it slipped off the lady's foot while in perfectly normal use. It would be erroneous to hold that the manufacturer may be liable for damages if he fails to warn users that a rope such as this might slip off a foot or out of a hand. When all the discussion of involved legal principles has been concluded, the case remains as simple as it was in the beginning: A lady was doing a simple exercise with a simple rubber rope, and it slipped off her foot and hit her in the eye. That is the whole of it. And the question is equally simple: Was the manufacturer therefore negligent? We think it was not. To hold otherwise would go beyond any reasonable dictates of justice in fixing the liabilities of manufacturers of products sold on the market.

Affirmed.

---

39. See, e. g., Radio City Music Hall Corporation v. United States, 135 F.2d 715 (2d Cir. 1943).

40. The subject is discussed in an article by Dean Pound, New Theories of Liability, 8 N.Y.CO.L.A.B. Bull. 32, 35 (1950).

See also James, Functions of Judge and Jury in Negligence Cases, 58 Yale L.J. 667, 689 (1949).

41. Huset v. J. I. Case Threshing Mach. Co., 120 F. 865 (8th Cir. 1903).

WASHINGTON, Circuit Judge (dissenting), with whom EDGERTON, Chief Judge, and BAZELON and FAHY, Circuit Judges, join.

I would reverse as to defendant Rubinstein.

Mrs. Jamieson bought the Lithe-Line, manufactured and marketed by this defendant, for the purpose of reducing her abdomen. Instructions for its use were packed in the container with the Lithe-Line. On the afternoon of the day the device was delivered to her home in nearby Virginia, plaintiff said, she read the instructions through, did two of the exercises there described and recommended "to get the feel of the rubber hose," and then proceeded to the "Tummy Flattener" exercise, the particular exercise "that was supposed to reduce" the abdomen. She followed the recommended procedure contained in the instruction booklet, and, while so doing, the Lithe-Line slipped off her feet and struck her across the eyes, knocking her unconscious and causing a detached retina and permanent partial loss of vision in the left eye. The injury occurred while she was performing the exercise exactly as the manufacturer had directed and recommended, without any deviation from the instructions and without fault on her part, so far as the record before us shows. Her suit is based, not on the theory that the manufacturer put on the market an exerciser in itself inherently dangerous, as the majority appears to believe, but on the premise that the exerciser *when used as directed* by the manufacturer became dangerous and that the manufacturer owed a duty to warn or otherwise protect her against such danger. In other words, her theory is that the use of the Lithe-Line in the Tummy Flattener exercise as directed by the manufacturer created an unreasonable risk of injury which gave rise to a duty toward users of the device. That theory of liability finds abundant support not only in the decisions of the Virginia courts, which govern here, but also in the general law of negligence.

1. Let us look first at general principles. The majority does not appear to dispute the fact that the Lithe-Line may slip off the feet when stretched in the Tummy Flattener exercise as directed, and that, if it does so, a force is released which can inflict injury on the user. It apparently bases its holding that the manufacturer had no duty to warn or protect the user as a matter of law on two grounds: (a) that the manufacturer could not have foreseen the risk of serious injury, and (b) that the danger was so obvious that the manufacturer was justified in believing that users would realize the danger.[1] But the record now before us does not provide a sufficient factual basis to award summary judgment to the manufacturer as a matter of law on either ground.

The majority states that "Any article may slip in use." If that premise is accepted, it must follow that the manufacturer could and should have foreseen that the Line might slip while being used in the Tummy Flattener exercise. From the directions for the exercise in question—and the accompanying drawing—it would appear that if the Line slips, the user's face will usually be in the path of the recoil. While injury of the type here involved and other serious injuries, as for example a broken nose or broken teeth, are perhaps less likely than a

1. Campo v. Scofield, 1950, 301 N.Y. 468, 95 N.E.2d 802, a case principally relied on, involved the question whether the complaint, which alleged negligence only in the *design* of an onion topping machine, stated a cause of action. It was held that the complaint was defective in failing to allege that the defect (in design) was latent or that the danger presented by the functioning of the machine was not known to the plaintiff or other users. In our case, the plaintiff does not rely on negligence in design as such, but on negligence in failing to warn or otherwise protect her. As will appear infra, there is no showing in the present record that the plaintiff actually appreciated the danger involved in using the exerciser according to directions or that she should be charged with knowledge of it. In this connection, cf. James, Products Liability, 34 Texas L. Rev. 44, 51–52 (1955).

facial bruise, a black eye, a bloody nose, or a cut lip, all were within the range of possibility and all can reasonably be regarded as sufficiently serious to impose a duty on the manufacturer to take reasonable steps to reduce the danger.[2] It would be a rare woman indeed who would willingly use an exerciser which, without fault on her part, could give her a black eye or a cut lip or any facial injury. As was said in Poplar v. Bourjois, 1948, 298 N.Y. 62, 80 N.E.2d 334, where the plaintiff pricked her finger on an insecurely fastened metal star on a perfume box, infection developed, and the finger was amputated:

"  *  *  * liability for negligence [on the part of the manufacturer] turns upon the foreseeability of any harm resulting from the careless conduct, not upon the foreseeability of the exact nature and extent of the injury which does in fact ensue. *  *  * It would be legally inconsequential that the amputation was less clearly to be foreseen than a simple scratch or pin prick." Id., 298 N.Y. at pages 67, 68, 80 N.E.2d at pages 336, 337.

And as the Supreme Court has recently said:

"It was not necessary that [defendant] be in a position to foresee the exact chain of circumstances which actually led to the accident." Ferguson v. Moore-McCormack Lines, Inc., 1957, 352 U.S. 521, 77 S.Ct. 457, 458, 1 L.Ed.2d 511.

Certainly I cannot say here that all foreseeable injury was so trivial that the manufacturer is, as a matter of law, relieved of all duty to protect the user from injury. Death from a shoe so constructed that a wrinkle would and did develop in its lining is surely unlikely, but the fact that such a shoe caused a blister has been held sufficient to let a jury decide the question of liability for negligence in a case in which the blister became infected and death resulted. Pearlman v. Garrod Shoe Co., 1937, 276 N.Y. 172, 11 N.E.2d 718.

The Lithe-Line was marketed for a particular class of persons—overweight women who desired to reduce or "streamline" parts of their body. It was not marketed for individuals who could be expected to have any special training or experience. See Restatement of Torts § 388, Comment i, p. 1048 (1934). The tendency of expanded rubber to contract to its original length, when released, is undoubtedly commonly known and was known by Mrs. Jamieson, according to her deposition (see footnote 4, infra). But the fact that she understood this hardly justifies the legal conclusion that she or any other user of the Lithe-Line would understand, without some tests, training or experience, that rubber of the type and consistency used in the Lithe-Line, when stretched in the Tummy Flattener exercise as directed, would or could recoil and strike the face of the user, with the impact alleged to have occurred here. In other words, the resiliency of rubber generally may be assumed to be a fact known to all, but reasonable minds can differ as to whether the danger that lurks in this condition in performing the particular exercise recommended by the manufacturer here—a striking force which can hit the eye and detach a retina —was readily apparent to all users of the device. See James, supra at 54, pointing out that liability is not defeated even under the narrowest rule unless the danger that lurks in a particular condition is

2. It is not required, of course, that a product be accident-proof, only that reasonable steps be taken to prevent injury. Poisons kill and knife blades cut. With poisons, reasonable care normally requires the use of an adequate warning. See West Disinfecting Co. v. Plummer, 1916, 44 App.D.C. 345. But with ordinary knives, though danger surely exists, a warning would add little to the ordinary user's knowledge and is not generally thought to be required. However, when the knife blade is a rotary wheel used with a power attachment, then there may be an unreasonable risk of injury unless a shield or similar protective device is used. The precaution need not (and often could not) *eliminate* the danger, but it at least should *reduce* an unreasonable risk to a reasonable one.

both obvious and is fully appreciated by the victim.[3] And while the physical laws of action equaling reaction may be understood by some, it does not follow that Mrs. Jamieson or any other housewife, when using the Lithe-Line as directed, will inevitably realize that she is stretching the Line to a point or a position where, on rebound, it can and will strike her face with the force here alleged.[4] Similarly, although the smoothness of the rubber rope was apparent, a jury could reasonably find that users would be justified in assuming that the rope would not slip. The manufacturer originated and recommended the particular exercise and invited women to perform it, and the user might assume with ample rea-son that the manufacturer had used reasonable care to determine that the depression in the bottom of the foot formed by the instep would hold the rope in place while the exercise was being performed. Cf. E. I. DuPont De Nemours & Co. v. Baridon, 8 Cir., 1934, 73 F.2d 26, 29; [5] cf. also Barrett v. Building Patent Scaffolding Co., 1942, 311 Mass. 41, 45–46, 40 N.E.2d 6, 9.[6]

The situation in this case bears some analogy to that in Hopkins v. E. I. Du Pont De Nemours & Co., 3 Cir., 1952, 199 F.2d 930, 933, where the dangerous character of dynamite generally was concededly obvious to all, but the court pointed out that the issue was whether the danger involved in the particular

---

3. James cites in support: J. C. Lewis Motor Co. v. Williams, 1952, 85 Ga.App. 538, 69 S.E.2d 816; Crist v. Art Metal Works, 1930, 230 App.Div. 114, 243 N.Y.S. 496, affirmed per curiam 1931, 255 N.Y. 624, 175 N.E. 341; Henry v. Crook, 1922, 202 App.Div. 19, 195 N.Y.S. 642; Karsteadt v. Philip Gross Hardware & Supply Co., 1922, 179 Wis. 110, 190 N.W. 844.

4. Mrs. Jamieson's testimony on deposition concerning this point was:
   "Q. [By defendant Woodward & Lothrop's counsel] You knew that [the Lithe-Line] was an elastic band, didn't you? You could stretch it and after you stretched it it would contract and resume its ordinary position like a rubber band does? A. That's right.
   "Q. And you knew if you stretched it above your head and if it was released— well, just as if I were stretching it between the thumb and the fourth finger of each hand, and if you raised one hand above the other hand and let it go it would snap down on the bottom hand, would it not? A. That's right.
   "Q. You knew that? A. Yes."
   No further questions on this point were asked. Giving the plaintiff the benefit of all possible inferences in her favor, this testimony fails to indicate that she understood as an actual fact that her use of the Line as directed could result in the Line striking her face on rebound. At most, it indicates that she realized that it might strike her hands if released. Even the experience of a small boy with a sling shot—cited by the majority, although he of course does not fall in the general class of persons for whom this device was marketed—probably would not make him fully aware of all the factors involved in the potential danger here.

5. The court there said:
   "Through its advertising and literature the defendant had expressly invited the plaintiff and other growers to use its product for the purpose of disinfecting bulbs and bulblets, and, since it had undertaken to direct the manner in which it should be used, the users had a right to assume that the company had exercised such care as an ordinarily prudent manufacturing chemist would usually have used in giving the directions for the use of such a product, and had not knowingly prescribed a use which would destroy their plants."

6. Barrett involved the question whether a painter had assumed the risk of working on defective scaffolding furnished by the defendant to his employer, or contributed negligently to his injury. The court, in deciding that these were jury questions, applied the familiar rule that a risk is obvious for this purpose only if the employee can be found to have appreciated the risk, taking his age, intelligence, and experience into account, and held that it could not decide that matter as a question of law. Inter alia it said, 40 N.E.2d at page 9: "The experience of the plaintiff is to be taken into account, but he had a right to rely to a reasonable extent upon the assumption that reasonably safe scaffolding had been provided. * * * But we are of opinion that it was a question for the jury to determine whether the dangerous condition * * * was obvious."

way it was there used was known to construction workers, and declined to take the case from the jury at the conclusion of the plaintiff's case.[7] Here also the issue is whether the danger involved in using the exerciser in the particular way it was used was, or should have been, fully apparent to plaintiff and other users, with the additional important factor here that the manufacturer specifically recommended and directed that it be used in that way. Much less than in Hopkins should such an issue be decided against the plaintiff as a matter of law on the incomplete and meager evidence here, where there is nothing tending to show that all elements of the danger involved in using the device as directed were in fact known to, or appreciated by, Mrs. Jamieson, and where there is no basis for a legal conclusion that she must be charged conclusively with knowledge of the danger, on the theory that all elements of it must have been apparent to all persons invited by the manufacturer to use the device. In these circumstances, I cannot hold that the manufacturer as a matter of law could reasonably assume that no protective measures were needed. The manufacturer of course could not expect that all the users would be experienced persons who are able to recognize the danger. This question, like foreseeability, should be left to the jury.

In any event, reasonable minds could differ as to whether the manufacturer could justifiably expect that prospective users would remain fully aware of the danger after reading his advertising claims, even assuming for purposes of argument that they might otherwise be reasonably expected to recognize and appreciate it. The leaflet of instructions furnished with the Lithe-Line stated *inter alia:*

"Lithe-Line—easily the best turn done to the body beautiful since the curve was invented. For, given enough of this ingenious little elastic rope it is possible for *any* body to prune the hips, sleek the legs, carve the waistline * * *. And do it pleasantly! As a cat does it— with the same grace-giving movements. * * * You'll have great fun, besides, pulling and stretching, bending and twisting * * *. A real workout is yours, too, against the tenacity of the Lithe-Line. You'll marvel at the supple way your body responds with new lines of rhythm and beauty as you stretch yourself into shape and gain the grace and poise that you've coveted all your life!"

The atmosphere created by such statements, especially the representation that it is possible for *"any* body" to reduce with it, directed at weight-conscious women such as the plaintiff, can reasonably be expected to dispel any suspicion of danger and to "lull the user * * * into a false sense of security," and this "might also reasonably have been foreseen by the defendant." See Maize v. Atlantic Refining Co., 1945, 352 Pa. 51, 55, 41 A.2d 850, 852, 160 A.L.R. 449, where the court used this language in holding that it was for the jury to say

7. Heggblom v. John Wanamaker New York, 1942, 178 Misc. 792, 36 N.Y.S.2d 777, cited by the majority, is not analogous. It involved an exerciser called "Stretch-a-way," not described in the opinion. A rubber strap of the exerciser broke after 3½ years of safe use. The retailer, not the manufacturer, was sued for breach of warranty and for negligence in failing to test the device and discover that it was defective. In the course of holding that no liability existed on the part of the retailer to the plaintiff, who was not the purchaser of the exerciser from the retailer, the court stated that the exerciser was not an inherently dangerous instrument as a matter of law, nor inherently dangerous, even if defective, since it had been used for 3½ years without breaking. As stated, the opinion does not describe the article or how it was used, so that no basis is afforded to compare it with the Lithe-Line. In any event the question there was not, as here, whether the use of the exerciser as directed created a peril as to which there was a duty to warn or otherwise protect users.

whether the warning, printed in small type on a label, against inhaling the fumes of a cleaning fluid, was sufficient where the label contained in large type on four sides of the can the words "Safety-Kleen." One supplying a chattel is subject to liability "if by word or deed he leads those who are to use the chattel to believe it to be of a character or in a condition safer for use than he knows it to be or to be likely to be." Restatement, Torts § 388, Comment b (1934). Cf. Crist v. Art Metal Works, 1930, 230 App.Div. 114, 243 N.Y.S. 496, affirmed per curiam 1931, 255 N.Y. 624, 175 N.E. 341, where it was said, in holding that a complaint, based on injuries received by a child from a toy revolver represented by the manufacturer to be "absolutely harmless," should not be dismissed without trial, id., 230 App.Div. at page 117, 243 N.Y.S. at page 499: "The advertising matter accompanying it [the article] may induce the use in such manner as to make an otherwise harmless article a source of danger." Compare also, as to the assumptions of safety which may reasonably be made by users on the basis of the manufacturer's printed statements: McCormick v. Lowe & Campbell Athletic Goods Co., 1940, 235 Mo.App. 612, 624–625, 144 S.W.2d 866, 871; Wolcho v. Arthur J. Rosenbluth & Co., 1908, 81 Conn. 358, 363–364, 71 A. 566, 568, 21 L.R.A.,N.S., 571; Henry v. Crook, 1922, 202 App.Div. 19, 195 N.Y.S. 642.

But apart from whether or not the record at this stage shows that the hazard was obvious to, or should have been appreciated by, Mrs. Jamieson, there is a further question: Can a manufacturer, after it has recommended that the exerciser be used in a way fraught with peril, and after injury results from that use, obtain judgment as a matter of law by asserting that the danger should have been fully apparent to anyone who so used it? In both De Eugenio v. Allis-Chalmers Mfg. Co., 3 Cir., 1954, 210 F.2d 409, 413, and Allis-Chalmers Mfg. Co. v. Wichman, 8 Cir., 1955, 220 F.2d 426, 427–428, the courts declined to upset jury verdicts and to hold that there was no negligence as a matter of law, where the injury occurred in using a machine precisely as directed by the manufacturer, notwithstanding that the danger from such use may have been obvious. Although the negligence alleged here is not negligence in the instructions given as in the cases just mentioned, but negligence in failing to warn, or otherwise protect (comparable to the alternative allegation of negligence in Allis-Chalmers Mfg. Co. v. Wichman, supra), the reasoning underlying those cases is persuasive.[8] So here, I would hold that it is for the jury to say, after hearing evidence, whether there was a duty to warn or otherwise protect plaintiff from the danger. And although the jury may consider whether the hazard was or should have been apparent to the plaintiff, this would seem to be pertinent in this type of case on the question of whether the plaintiff assumed the risk,[9] cf., e.g., Barrett v. Building Patent Scaffolding Co., supra, rather than on the question of the manufacturer's negligence. At the present stage, a jury could reasonably find that women purchasing the Lithe-Line for purposes of reducing would be warranted in assuming that an exercise, prescribed without any qualification by a well-known and reputable manufacturer

---

8. Although in De Eugenio, 210 F.2d at page 413, it was stated that "It is probably true, as defendant insists, that there is no duty to warn against the obvious," the duty to warn was not there involved and the statement cannot in any event be treated as a considered and definite holding. In any case, as already appears, here all elements entering into the danger cannot be regarded as fully apparent to the expected users, so that a jury could reasonably find a duty to warn or otherwise protect.

9. Defendant Rubinstein did not plead this or contributory negligence as defenses, although defendant Woodward & Lothrop did. Cf. Dougherty v. Chas. H. Tompkins Co., 1957, 99 U.S.App.D.C. 348, 240 F.2d 34, 35–36.

such as the defendant, could be performed with the device issued by that manufacturer without injury, and that a duty to warn or otherwise protect existed.

Thus, I must disagree strongly with the majority view. I think that the evidence adduced thus far—the device itself plus the directions and the plaintiff's testimony on deposition that she was injured as she used the device precisely as directed—indicate at the very least that there may be liability and that the plaintiff is entitled to an opportunity to present her evidence. This is not to say, of course, that if evidence were received the plaintiff would necessarily prevail. It would be a question for the trier of fact on all the evidence to resolve the factual issues bearing on the manufacturer's alleged negligence and the affirmative defenses, if any, which might be pleaded.

2. We all agree that Virginia law should guide us, since the injury occurred in that state. Boland v. Love, 1955, 95 U.S.App.D.C. 337, 222 F.2d 27. While no Virginia case has involved injury from a product under quite the circumstances here, in McClanahan v. California Spray-Chemical Corp., 1953, 194 Va. 842, 75 S.E.2d 712,[10] the court had this to say about a manufacturer's duty toward users at common law:

> "The liability of a manufacturer for injury to a third person, which injury results from the use, in a manner within the reasonable contemplation of the parties, of a manufactured product that is potentially dangerous, is based upon the principle of law that where one person is placed in such a position with regard to another that anyone of ordinary sense would know that his failure to use ordinary care and skill might cause injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger. * * *

> "The fact that directions are overlooked or are not meticulously followed does not relieve the manufacturer of the duty to warn of latent dangers common to a class of articles." 194 Va. at page 852, 75 S.E. 2d at page 718.

I understand this to adopt the same criteria for liability as have been heretofore considered: a manufacturer must use reasonable care to guard users against dangers resulting from the contemplated use of its product, even though there is no privity of contract,[11] when the risk of injury is foreseeable in the sense that it is reasonably possible and users cannot justifiably be expected to recognize the danger. If a manufacturer may be held liable for injury that results when directions were overlooked, surely there may be liability for injury that results when directions are precisely fol-

---

10. In McClanahan, the plaintiff used an orchard spray at a time which was not the time specified for its use in the manufacturer's instructions, with the result that his trees were damaged and produced no fruit for two years. Although the manufacturer's directions stated that the spray was not to be used on bearing trees after a certain time, no separate warning was given that use after such time might harm the trees. Notwithstanding that the directions as to time for use were not followed, the court declined to set aside a jury verdict for the plaintiff, holding that the jury could reasonably find that the manufacturer had failed to give the necessary and adequate warning to prevent injury, as re-

quired by the Federal and Virginia Insecticide, Fungicide, & Rodenticide Laws, 7 U.S.C.A. § 135 et seq., Code 1950, § 3–198 et seq.

11. The Virginia court had arrived at the position that privity is not required even before the New York court's decision in MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050. See Standard Oil Co. v. Wakefield's Administrator, 1904, 102 Va. 824, 831, 47 S.E. 830, 832, 66 L.R.A. 792. See also our decision in Hanna v. Fletcher, 97 U.S. App.D.C. 310, 231 F.2d 469, certiorari denied sub nom Gichner Iron Works, Inc., v. Hanna, 1956, 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1501.

lowed. More recently in Olds v. Wood, 1955, 196 Va. 960, 86 S.E.2d 32, 33, the court reiterated this principle, recognizing as correct the statement that a manufacturer of an article, which becomes dangerous when applied to its intended use in the usual and customary manner, is liable to any person who, without fault on his part, is injured as a result of the manufacturer's negligence in its manufacture or sale.[12] As already demonstrated, at this stage of our case it appears that the jury could find that the essential elements for liability under these decisions—that is, use as directed and intended, without fault on the user's part, injury from such use, and foreseeability of the injury in every sense—all exist. And if, after a manufacturer's directions have told the time at which a tree spray is to be used, it is for the jury to find whether a separate warning that it should not be used at other times is necessary, as McClanahan holds, surely the Virginia court would leave it to the jury to say whether a manufacturer, who tells a user to perform a dangerous exercise with his product and injury results from so doing, should have warned or otherwise protected the user in the circumstances here. Under Virginia law then, the majority seems quite wrong in finding no liability as a matter of law.

Most of the decisions from other jurisdictions cited by the majority hold that questions of the sort presently raised must be determined by a jury. Those holding that the manufacturer was not liable as a matter of law did not involve an injury received while a product was being used exactly as directed by the manufacturer without mistake or fault on the user's part; on the contrary, the injury occurred when the product was not being used according to directions or not in the usual, customary or correct way,[13] or the injury resulted from a mishap brought about by the apparent carelessness of the user,[14] or the holding is not persuasive for other reasons.[15] Thus,

12. In the Olds case it was held that there was a failure of the plaintiff to prove the acts of negligence alleged and to bring the case within the principle of law set out in the text above. There the directions on a bottle of shampoo instructed the user to heat the liquid until warm, to pour through the hair, to massage. and to dry well with a towel. Plaintiff followed directions and after completing the drying, lit a match "at arm's length." Upon lighting the match there was a "flash of flame" which engulfed plaintiff's hair and clothing. Plaintiff's evidence established that the liquid was lukewarm when applied to her hair and that its flash point was 171 degrees. Thus, the plaintiff's own evidence showed that the flash could not have been caused by the liquid heated only to the lukewarm stage (below its flash point) and compelled the conclusion that the liquid was not dangerous when used in the usual and customary manner, i. e., warm, according to directions. Her allegations that the manufacturer was negligent "in the manufacture and sale" of the shampoo and in failing to "give proper and complete instructions as to its use" were thus not proved.

13. See Sawyer v. Pine Oil Sales Co., 5 Cir., 1946, 155 F.2d 855; Yaun v. Allis-Chalmers Mfg. Co., 1948, 253 Wis. 558, 34 N.W.2d 853; Crandall v. Stop & Shop, 1937, 288 Ill.App. 543, 6 N.E.2d 685.

14. See Blissenbach v. Yanko, 1951, 90 Ohio App. 557, 107 N.E.2d 409, 412, where in concluding that the steam vaporizer was not negligently constructed as alleged, the court stated: "* * * the negligence of the mother * * * was the sole proximate cause" of the injury, on the evidence; Sawyer v. Pine Oil Sales Co., supra. Even in Campo v. Scofield, supra [301 N.Y. 468, 95 N.E.2d 806], discussed in footnote 1 above, the court concluded by saying that the complaint was properly dismissed, in part because the duty owed to remote users does not require a manufacturer "to protect against injuries resulting from the user's own patently careless and improvident conduct." See also Sadler v. Lynch, 1951, 192 Va. 344, 64 S.E.2d 644.

15. Poplar v. Bourjois, supra, applied Maryland law, which the court indicated did not coincide with its views. Timpson v. Marshall, Meadows & Stewart, 1950, 198 Misc. 1034, 101 N.Y.S.2d 583, is a decision by a trial justice which seems out of harmony with Poplar and

neither reason nor authority gives support to the majority's position.

3. A further point remains. The majority says that no issue of fact was raised as to the negligence of the defendant in not providing safeguards. The complaint alleged that the failure to "warn or *otherwise protect*" the plaintiff against the danger constituted negligence: this was denied by defendant Rubinstein. Furthermore, the plaintiff in her answer to defendant's interrogatory, as to the manner in which the device is inherently dangerous, replied in part:

> "No safety or protective device of any nature to prevent the 'Lithe-Line' from striking the user doing the 'Tummy Flattener' exercise is provided by the defendants nor is any warning of danger given."

Even though the complaint and the plaintiff's answer do not use the word "safeguards" explicitly, that is the clear sense of the terms used. The issue as to whether the defendant was negligent in not providing safeguards was thus adequately raised and remained an issue so long as the limited evidence before the trial court did not resolve or eliminate it. Cf. Roumel v. Bernstein, 100 U.S.App. D.C. 224, 243 F.2d 647. No evidence was produced to make it "quite clear what the truth is" on this issue. Sartor v. Arkansas Natural Gas Corp., 1944, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967. The plaintiff "is entitled to [her] day in court" on this "vital issue of fact:" since "[t]he material facts as to such issue are entirely absent from" the record, the issue is not proper for disposition on summary judgment. Vale v. Bonnett, 1951, 89 U.S.App.D.C. 116, 119, 191 F.2d 334, 337; see also Pierce v. Ford Motor Co., 4 Cir., 1951, 190 F.2d 910, 915, certiorari denied 1951, 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666; Kaufman v. Western Union Telegraph Co., 5 Cir., 1955, 224 F.2d 723, 727, certiorari denied 1956, 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825.[16]

As the majority states, "It was not necessary that her [the plaintiff's] evidence be proffered," on a motion for summary judgment. Nor was it necessary in my view that the plaintiff "suggest" as a fact "the desirability or feasibility of additional accessories to the rope," such as "flapping stirrups or midway loops," or "a different type of rope" (the terminology of the majority opinion), or that she particularize "a safeguard" of any other nature. The general issue as to negligence in not protecting her by safety devices or otherwise had already been raised. Only evidence (which the court concedes was not required) could show the desirability and feasibility of any particular device or method,[17]—unless it

---

other decisions of the highest New York court.

16. The majority cites Radio City Music Hall Corp. v. United States, 2 Cir., 1943, 135 F.2d 715, as support for saying that the plaintiff "had to raise an issue of fact." This may be granted, but the cited case does not warrant a holding that the issue was not raised here. There a witness for the plaintiff gave evidence on deposition sufficient to entitle it to a verdict if believed. The Government on plaintiff's motion for summary judgment did not suggest that the witness fabricated, only that given more time it might find evidentiary support for its contention that some of the persons shown by the witness' testimony to be independent contractors were in fact employees.

This, a mere hypothesis, was held not to make a genuine issue of fact. No such situation is involved here.

17. If permitted to do so, perhaps the plaintiff could offer evidence that the use of corrugated rubber or footstraps would have reduced the chance of slipping, or that other manufacturers have taken such precautions, or that other manufacturers use a less resilient material than rubber (or at least less resilient rubber than the type used here). Perhaps she could show that other manufacturers of similar products have provided directions for a safer way to do the exercise—as, for example, by wearing shoes or thick socks to provide a secure grip on the Line, or by changing the position of the hands so that the

were of course some device, the desirability and feasibility of which was a matter of common human understanding, requiring no evidence to demonstrate, and in that event the issue as to it would be apparent and plaintiff should have the benefit of arguing it to a jury without evidence. Cf. Dougherty v. Chas. H. Tompkins Co., 1957, 99 U.S.App.D.C. 348, 240 F.2d 34, 36–37. Further, had plaintiff suggested a particular safeguard, the suggestion might well have been construed as limiting the broad issue as to protective measures theretofore raised to the one safeguard suggested. Finally, the majority's view results in resolving against the plaintiff all doubts on the existence of an issue as to safeguards, contrary to the rule heretofore stated by us. Dewey v. Clark, 1950, 86 U.S.App.D.C. 137, 143, 180 F.2d 766, 772. That view seems to me quite untenable.

\* \* \* \* \* \*

Surely, under the law of Virginia there is no broad franchise to manufacturers to put on the market, without liability, products accompanied by directions that they be used in ways which are dangerous to the person, and which may cause physical injury without fault on the part of the user. I cannot think that the courts of that state would willingly countenance such a result, or that they would allow considerations of protecting or fostering the business of this manufacturer or of others to be extended that far. Certainly when this court declares the law of the District of Columbia I hope it will take a more enlightened view.

---

path of recoil would be shifted—or that this defendant should have done so in any event. Perhaps she could even supply evidence that the instructions should not have prescribed the exercise at all in order to provide reasonable protection for her. On the other side, perhaps the defendant could show that countless women have done this exercise with this product without injury, and could provide other relevant evidence bearing on

the desirability and feasibility of particular types of safeguards, and its duties in the matter. However, further evidence from the plaintiff of an appropriate standard of reasonable care, though relevant, is normally not a prerequisite to the establishment of a jury question. See James and Sigerson, Particularizing Standards of Conduct in Negligence Trials, 5 Vand.L.Rev. 697 (1952).